IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CAROL A. WILSON**, *et al.*, | Case No.: 2:16-cv-1084 |
| *Plaintiffs,* | Chief Judge Edmund A. Sargus |
| *vs.* | Magistrate Judge Kimberly A. Jolson |
| **CHAGRIN VALLEY STEEL ERECTORS, INC.,** | |
| *Defendant / Third-Party Plaintiff,* | |
| *vs.* | |
| **JUSTIN M. HELMICK** <br> 1621 East 332nd Street <br> Eastlake, Ohio 44095-3926, | **DEFENDANT / THIRD PARTY PLAINTIFF CHAGRIN VALLEY STEEL ERECTORS, INC.'S SECOND AMENDED COUNTERCLAIM AND SECOND AMENDED THIRD-PARTY COMPLAINT** |
| *Third-Party Defendant.* | |

Defendant / Third-Party Plaintiff Chagrin Valley Steel Erectors, Inc. ("Chagrin Valley"), for its Second Amended Counterclaim against Carol A. Wilson, Administrator of Ohio Operating Engineers Health and Welfare Plan, Ohio Operating Engineers Pension Fund, Ohio Operating Engineers Apprenticeship and Training Fund, and Ohio Operating Engineers Education and Safety Fund (collectively, "Plaintiffs") and its Second Amended Third-Party Complaint against Justin M. Helmick ("Helmick"), hereby incorporates its Answer and Affirmative Defenses to Plaintiffs' Complaint as through fully re-written herein, and asserts as follows:

## JURISDICTION AND VENUE

1. Jurisdiction and venue in this Court were invoked by Plaintiffs' Complaint, and is appropriate pursuant to S.D. Ohio Civ. R 82.1.

## FACTS

2. Upon information and belief, Plaintiffs are the duly appointed, qualified, and acting trustees of the trusts established as part of the Ohio Operating Engineers Health and Welfare, Pension, Apprenticeship and Training, and Education and Safety Plans by certain agreements and declarations of trust (collectively, the "Trusts"). True and accurate copies of the Trusts are not attached hereto, as they are not in Chagrin Valley's possession, but are, upon information and belief, in the possession of Plaintiffs.

3. Chagrin Valley executed the Construction Employers Association Agreement on or about April 23, 2012, the Short Form Building Construction Agreement or about June 20, 2012, and the 2000 Hour Addendum Agreement on or about March 31, 2014 (collectively, the "Agreements"). True and accurate copies of the relevant portions of the Agreements are attached hereto as **Exhibit A** and are incorporated herein by reference. The complete copies of Agreements are too voluminous to attach hereto but are available to all parties; Chagrin Valley is not in possession of the CEA Collective Bargaining Agreement (the "CBA") referenced in the 4/23/12 CEAA Agreement, and therefore does not attach the CBA hereto.

4. Chagrin Valley is neither a "participant" nor a "beneficiary" as defined by 29 U.S.C. §1002(7) and 29 U.S.C. §1002(8).

5. Pursuant to the Agreements, Chagrin Valley agreed to timely and fully pay all fringe benefit payments and contributions relative to its employees covered by the Agreements. These payments are received by Plaintiffs and/or the Trusts.

6. Chagrin Valley timely and fully made all fringe benefit payments and contributions relative to its employees covered by the Agreements and pursuant to the same

policies, methods and calculations it had always used to compensate its employees covered by the Agreements, with Plaintiffs' full knowledge and acquiescence.

7.  Plaintiffs approved, and had no issues with any of, its previous audits of Chagrin Valley's payroll records, up to and including Plaintiffs' audit of Chagrin Valley's June 2012 – January 2014 payroll records, relative to its employees covered by the Agreements.

8.  However, on or about July 8, 2014, Plaintiffs unexpectedly expressed concerns with Chagrin Valley's policies, means and methods for compensating its employees covered by the Agreements, which Plaintiffs previously approved.

9.  In response, Chagrin Valley requested further explanations relative to Plaintiffs' newly-founded concerns.

10. Plaintiffs did not provide an adequate response. Instead, on or about January 15, 2015, Plaintiffs advised Chagrin Valley of its retroactive re-determination that, despite previously approving Chagrin Valley's contributions for and Plaintiffs' audit of the June 2012 – January 2014 payroll records, Chagrin Valley failed to fully pay its fringe benefit obligations pursuant to the Agreements, including the February 2013 through April 2014 and October 2014 through February 2015 payroll periods.

11. Chagrin Valley repeatedly requested explanations and details relative to Plaintiffs' audit "findings," determinations and concerns, to which Plaintiffs either ignored or failed to satisfactorily respond.

12. Instead, Plaintiffs continuously provided Chagrin Valley with notifications that, pursuant to its retroactive audit "findings," Chagrin Valley failed to fully pay certain fringe benefit contributions pursuant to the Agreements. As a result, Plaintiffs also assessed retroactive late fees and penalties for Chagrin Valley's allegedly delinquent contributions.

13. Chagrin Valley repeatedly (a) objected to Plaintiffs' audit "findings;" (b) requested explanations as to Plaintiffs' audit calculations and determinations and its concerns over policies that it previously approved; and (c) provided waivers from employees waiving its rights to certain fringe benefits, to which Plaintiffs either failed to respond, failed to adequately respond, or responded with revised audit "determinations," to which no, or unsatisfactory, explanations were provided.

14. Chagrin Valley made repeated efforts to obtain a resolution with Plaintiffs, to which Plaintiffs' either ignored, or responded to with continued unsubstantiated audit "determinations" and increased late fees and penalties.

15. Meanwhile, Chagrin Valley, at all times, remained current on its contributions and payments pursuant to the Agreements.

16. In turn, Plaintiffs applied and continue to apply, all contributions and payments issued by Chagrin Valley to its unilaterally-determined oldest outstanding balance allegedly (and retroactively) due relative to the Agreements, over Chagrin Valley's repeated objections. As a result, Chagrin Valley's current contributions appear delinquent on Plaintiffs' records, and, as a result, among other things:

   a. the Chagrin Valley employees covered by the Agreements no longer received certain benefits, including health insurance and retirement benefits, pursuant to the Agreements; and

   b. Plaintiffs filed this lawsuit, which negatively impacts Chagrin Valley's business operations, relations, contracts and reputation.

17. Helmick, on his own and/or as agent for Plaintiffs, corresponded with Chagrin Valley's customers, in which he made false, defamatory, and disparaging statements about Chagrin Valley relative to its allegedly delinquent contributions, specifically to cause harm to

Chagrin Valley's reputation and contractual and business relationships, present and future, and to force Chagrin Valley to acquiesce to Plaintiffs' disputed audit determinations.

18. For example, on or about November 2, 2016, Helmick, acting on his own and/or as an agent for Plaintiffs, with full knowledge of Chagrin Valley's objections to Plaintiffs' retroactive and unilateral audit findings, contacted Infinity Construction Co., Inc. ("Infinity") (one of Chagrin Valley's clients/customers), verbally and in writing to "advise" that Chagrin Valley "was not in good standing" with Plaintiffs because it owed $60,000.00 in allegedly outstanding contributions. The purpose of this communication, by Helmick's own *verbatim* statement, was to request Infinity's "help get them [Plaintiffs] paid in full." *See* **Exhibit B** hereto, which is incorporated herein by reference.

19. Upon information and belief, Helmick, on his own and/or as agent for Plaintiffs, with full knowledge of Chagrin Valley's objections to Plaintiffs' retroactive and unilateral audit findings, utilized this correspondence to not only falsely represent that Chagrin Valley owed Plaintiffs $60,000.00 and was "not in good standing" with Plaintiffs, but to, among other things, force and coerce Chagrin Valley to acquiesce to Plaintiffs' disputed audit determinations, to enlist Chagrin Valley's client and customer to "help get [Plaintiffs] paid" through implied threats of stressed, unfavorable, reduced or discontinued business relationships and/or contracts, present and future, and to disparage Chagrin Valley's business reputation through these false representations of fact.

20. Upon information and belief, the Plaintiffs and Helmick knew Chagrin Valley had contractual and business relationships with clients and customers, acted specifically to interfere with those relations by publishing the above mentioned false representations concerning Chagrin Valley's standing with Plaintiffs and allegedly delinquent contributions. Plaintiffs and Helmick

also enlisted Chagrin Valley's client and customer to "help get [Plaintiffs] paid" through implied threats of stressed, unfavorable, reduced or discontinued business relationships and/or contracts, present and future, and to disparage Chagrin Valley's business reputation through these false representations of fact. Plaintiffs and Helmick acted without justification or privilege.

21. Upon information and belief, Plaintiffs and Helmick knew that their actions would interfere with Chagrin Valley's contractual and business relations with their clients and customers, present and future, by causing stressed, unfavorable, reduced or discontinued contractual and/or business relations between Chagrin Valley and its customers and clients, and acted with the intent to interfere with those relations and to coerce and/or force Chagrin Valley to agree to, and pay, Plaintiffs' disputed audit "determinations."

22. Indeed, as just one example, Infinity accused Chagrin Valley of "playing dangerous games" in direct response to Helmick's 11/2/16 correspondence. *See* **Exhibit B**. Infinity further stated its intention to "hold payments" and threatened to "cease awarding any more work" until Chagrin Valley resolved its dispute with Plaintiffs. *Id.*

23. Upon information and belief, Plaintiffs and Helmick acted with the intent to ruin Chagrin Valley's name and reputation, to create scenarios where Chagrin Valley would not receive work, and to extort settlement funds from them.

24. Chagrin Valley now files this Counterclaim and Third-Party Complaint to address these various legal wrongs and recover the monetary damages and declaratory and injunctive relief owed to it.

## COUNT ONE
**(Breach of Contract by Chagrin Valley against Plaintiffs)**

25. Chagrin Valley realleges and incorporates by reference the allegations contained in all of the preceding paragraphs 1 through 24 of this Counterclaim and Third-Party Complaint as though fully rewritten herein.

26. Plaintiffs are third-party or intended beneficiaries under the Agreements.

27. Plaintiffs failed to perform and satisfy its contractual obligations under the Agreements by, but not limited to, (a) properly calculating its audit determinations of Chagrin Valley's payroll records, (b) re-auditing Chagrin Valley's payroll records and retroactively dishonoring policies and procedures it previously approved, (c) failing to satisfactorily articulate (or, in some cases, articulate whatsoever) its audit determination calculations, (d) failing to adequately respond (or in some cases, respond whatsoever) to Chagrin Valley's repeated efforts to communicate with Plaintiffs relative to the Agreements; and (e) advancing false statements and positions to third-parties regarding its unilateral and erroneous audit determinations and calculations.

28. As a direct and proximate result of Plaintiffs' breaches of the Agreements, Chagrin Valley incurred and is entitled to recover from Plaintiffs damages in an amount exceeding $75,000, to be proven with particularity at trial, plus interest.

## COUNT TWO
**(Declaratory Judgment by Chagrin Valley against Plaintiffs)**

29. Chagrin Valley realleges and incorporates by reference the allegations contained in all of the preceding paragraphs 1 through 28 of this Counterclaim and Third-Party Complaint as though fully rewritten herein.

30. Plaintiffs are third-party or intended beneficiaries under the Agreements.

31. There exists a dispute between Chagrin Valley and Plaintiffs regarding each other's rights, obligations, and remedies under the Agreements.

32. Chagrin Valley is entitled to a declaration of its rights under the Agreements including its rights and remedies relating to the amounts owed by Chagrin Valley to Plaintiffs relative to the Chagrin Valley employees covered by the Agreements.

33. Specifically, Chagrin Valley is entitled to a declaration that it is not delinquent, and is wholly current, on any fringe benefit contributions or any other payments pursuant to the Agreements, and therefore not liable for any delinquent contributions, late fees or penalties.

34. Chagrin Valley is also entitled to a declaration that Plaintiffs must compensate Chagrin Valley for the fees, costs and premiums it paid to continue certain benefits, including health insurance and retirement benefits, for its employees covered by the Agreements are no longer receiving the benefits to which they are entitled.

## COUNT THREE
### (Defamation against Plaintiffs and Helmick)

35. Chagrin Valley realleges and incorporates by reference the allegations contained in all of the preceding paragraphs 1 through 34 of this Counterclaim and Third-Party Complaint as though fully rewritten herein.

36. Upon information and belief, Helmick, on his own and/or as agent for Plaintiffs, intentionally and maliciously made false and defamatory statements to third parties about Chagrin Valley's standing with Plaintiffs and its allegedly delinquent contributions to Plaintiffs.

37. These statements were both defamatory per se and caused special harm to Chagrin Valley, including but not limited to damage to Chagrin Valley's business relationships and contracts, present and future, and the attorneys' fees and other costs Chagrin Valley has incurred and will incur to prove that these statements were false and defamatory.

38. Helmick and Plaintiffs are liable to Chagrin Valley for the actual costs incurred and for the damage to Chagrin Valley's reputation, as a result of the defamation in an amount exceeding $75,000.00, as shall be specifically proven at trial.

## COUNT FOUR
### (Tortious Interference with Business Relations against Plaintiffs and Helmick)

39. Chagrin Valley realleges and incorporates by reference the allegations contained in all of the preceding paragraphs 1 through 38 of this Counterclaim and Third-Party Complaint as though fully rewritten herein.

40. Business relationships exist between Chagrin Valley and its clients and customers, including Infinity, of which Helmick and Plaintiffs were aware.

41. Upon information and belief, Helmick, on his own and/or as agent for Plaintiffs, acted with the intent to interfere with the present and future business relationships between Chagrin Valley and its clients and customers, including Infinity, when Helmick published false, defamatory, and disparaging statements about Chagrin Valley, without justification or privilege.

42. Upon information and belief, Helmick, on his own and/or as agent for Plaintiffs, also acted with the intent to interfere, and in fact did interfere, with the business relationships between Chagrin Valley and clients and customers, including Infinity, in an effort to coerce and/or force Chagrin Valley to agree to, and pay, Plaintiffs' disputed audit determinations.

43. Helmick's and/or Plaintiffs' tortious interference with these business relationships resulted and/or will result in stressed, unfavorable, reduced or discontinued business relationships between Chagrin Valley and its clients and customers, including Infinity, and caused, or will cause, Chagrin Valley to incur, and continue to incur, damages in an amount exceeding $75,000.00, as shall be specifically proven at trial.

WHEREFORE, Chagrin Valley Steel Erectors, Inc. respectfully requests judgment as follows:

A. As to Count One, judgment in its favor against Carol A. Wilson, Administrator of Ohio Operating Engineers Health and Welfare Plan, Ohio Operating Engineers Pension Fund, Ohio Operating Engineers Apprenticeship and Training Fund, and Ohio Operating Engineers Education and Safety Fund in an amount in excess of $75,000.00, plus interest, to be particularity with specificity at trial;

B. As to Count Two, a declaratory judgment in its favor against Carol A. Wilson, Administrator of Ohio Operating Engineers Health and Welfare Plan, Ohio Operating Engineers Pension Fund, Ohio Operating Engineers Apprenticeship and Training Fund, and Ohio Operating Engineers Education and Safety Fund that Chagrin Valley is not delinquent, and wholly current, on any fringe benefit contributions or any other payments, and therefore not liable for any delinquent contributions, late fees or penalties, and a declaration that Plaintiffs must compensate Chagrin Valley for the fees, costs and premiums it paid to continue certain benefits, including health insurance and retirement benefits, for its employees covered by the Agreements are no longer receiving the benefits to which they are entitled;

C. As to Counts Three and Four, judgment in its favor against Carol A. Wilson, Administrator of Ohio Operating Engineers Health and Welfare Plan, Ohio Operating Engineers Pension Fund, Ohio Operating Engineers Apprenticeship and Training Fund, and Ohio Operating Engineers Education and Safety Fund and/or Justin M. Helmick, jointly and severally, in an amount in excess of $75,000.00, to be proven with particularity at trial, plus punitive damages and attorneys' fees; and

D. For any other determinations that the Court deems just.

Respectfully submitted,

Date: June 20, 2017

/s/ *Melissa A. Jones*
Andrew J. Natale (0042110)
Melissa A. Jones (0074967)
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, OH 44114
Telephone: 216.515.1660
Facsimile: 216.515.1650
anatale@frantzward.com
mjones@frantzward.com
*Attorneys for Defendant / Third-Party Plaintiff Chagrin Valley Steel Erectors, Inc.*

## CERTIFICATE OF SERVICE

  A copy of the foregoing was filed electronically on June 20, 2017.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

              */s/ Melissa A. Jones*
              *One of the Attorneys for Defendant*

```
1104
4323125            IUOE DIST 1              04-24-12 03:17p    Pg: 2/2
```

International Union of Operating Engineers, Local 18
3515 Prospect Avenue, Cleveland, OH 44115
(216) 432-3138 • Fax (216) 431-7118

**INTERIM
CONSTRUCTION EMPLOYERS ASSOCIATION AGREEMENT**



CODE NO. 000924300
NEW ____ OLD ____
ASSIGNED BY KZ

In consideration of the benefits to be derived and other good and valuable consideration, the undersigned employer or its successor, although not a member of the Construction Employers Association (CEA), does hereby agree to adopt, accept and become signatory to the CEA Building collective bargaining agreement between the Construction Employers Association and the International Union of Operating Engineers, Local 18 and its Branches, AFL-CIO, for the period beginning May 1, 2012 through April 30, 2015. This employer recognizes the International Union of Operating Engineers, Local 18 as the exclusive bargaining agent of all its employees engaged in work within the trade jurisdiction of the Operating Engineers as listed in the agreement wage classifications [Exhibit A] and who are engaged in Building Construction for the employer. The employer agrees that Local 18 has demonstrated that it is the majority representative of such employees in the appropriate collective bargaining unit as listed in the contract wage classifications.

The International Union of Operating Engineers Local 18 members, therefore, will not engage in an economic strike upon expiration of the current collective bargaining agreement, which expires at midnight April 30, 2012. As consideration for Local 18 members to continue to work beyond the April 30, 2012 expiration date, the undersigned employer or its successor agree to sign and be bound to the newly negotiated agreement and to pay without exception all newly negotiated CEA increased wages, fringes and other terms retroactive to May 1, 2012.

This Agreement shall be effective as of the date set forth.

Chagrin Valley Steel Erectors, Inc.
Name of Employer (printed)
4500 Hamann Parkway
Employer Address
Willoughby, OH 44094
City, State, Zip
440-975-1556
Area Code and Telephone Number

_____ V-Pres
Authorized Employer Representative Signature
John Ruple, Vice Pres.

International Union of Operating Engineers,
Local 18 Representative

4-23-12
Date

RECEIVED
APR 25 2012
BY: ____



EXHIBIT A

**SHORT FORM BUILDING CONSTRUCTION AGREEMENT FOR
ASHTABULA, CUYAHOGA, ERIE, GEAUGA, HURON, LAKE, LORAIN AND MEDINA COUNTIES
IN THE STATE OF OHIO**

CODE NO. 00924300
NEW ____ OLD ____
ASSIGNED BY TW

This Agreement entered into this 20th day of June, 2012 (year), by and between Chagrin Valley Steel Erectors Inc., hereafter called the "Company" of Willoughby, OH 44094 (city, state), and the International Union of Operating Engineers, Local 18 and its Branches, AFL-CIO, hereafter called the "Union."

The parties agree:

1) The Company is not, nor does it choose to be, a member of any multi-employer bargaining group who has a labor agreement with the Union.

2) The Company recognizes the Union as the exclusive bargaining agent of all its employees engaged to work within the trade jurisdiction of the Operating Engineers in building construction for the Company as set forth in its Construction Employers Association (CEA) Building Agreement.

3) The Company is not represented by any employer bargaining unit nor has any employer bargaining unit authority to act as an agent for the Company; however, the Company agrees to adopt and accept all the terms, wage rates and conditions of the 2012 – 2015 CEA Building Agreement (hereafter "The Agreement") except as modified herein. The Company further agrees to make contributions to the Health and Welfare Fund, Pension Fund, Apprenticeship Fund, and Safety Training and Educational Trust Fund as outlined in said CEA Building Agreement.

4) a. Both parties hereto recognize that by the execution of this Agreement, the Company does not become a member of any multi-employer bargaining unit nor does it assign its bargaining rights to any such unit. The Company is not bound or obligated by the provisions of Article (XI) of "The Agreement".

   b. With the exception of Article (IV) of "The Agreement" both parties agree that all reference to any employer bargaining unit shall be deleted from the 2012 – 2015 CEA Building Agreement.

   c. Article (XIV) paragraph 114 of "The Agreement" shall be replaced with the following: Grievances and Arbitration In the event that differences arise during the term of this agreement concerning its interpretation or application, a prompt effort shall be made to settle the dispute first between the Company and the employee claiming to be aggrieved. If the informal discussions do not resolve the matter and if further appeal is desired, the matter shall be put in writing and signed by the employee and a Union representative. The written grievance shall state the contractual provision violated and the facts and the relief or remedy requested.

   1. The written grievance shall be submitted to the Company's job site manager within five (5) calendar days of the act, event or occurrence upon which it is based. Thereafter, the parties shall meet to discuss the matter and the Company will give a written answer to the grievance within five (5) calendar days of the meeting.

   2. In the event that the above process does not result in settlement, the Union may then refer the matter to arbitration by written request to the Federal Mediation and Conciliation Service, within five (5) calendar days of the Company's answer, for the submission of a list of seven (7) qualified arbitrators from which list the parties will select a sole qualified arbitrator. The arbitrator shall be selected by the alternate striking of names. The expenses and fees of the arbitrator shall be shared equally by the parties.

   3. Arbitration shall be final and binding.

5) A copy of the 2012 – 2015 CEA Building Agreement is attached hereto and made a part hereof as though fully rewritten except as modified herein.

6) The Company agrees now and until the expiration of the newly negotiated agreement to deduct and transmit to the treasurer of the Political Education Patterns (PEP) the amount specified for each hour worked from the wages of those employees who voluntarily authorized such contributions on the forms provided for that purpose by Political Education Patterns (PEP), 3515 Prospect Avenue, Cleveland, Ohio 44115. These transmittals shall occur monthly and shall be accompanied by a list of the names of those employees for whom such deductions have been made and the amount deducted for each such employee. The costs of administering this payroll deduction for P.E.P. are incorporated into the economic package provided under the terms of this Agreement so that the Union has, through its negotiations and its execution of this Agreement, reimbursed the Employer for the costs of administration.

7) In consideration for the undersigned employer's agreement to man all equipment with operating engineers, the Union agrees to the following operating engineer classification of General Laborer who will perform general laborer work which includes intermittent operation of skid steers, forklifts, and like equipment at the hourly rate of twelve dollars ($12.00) per hour plus fringes (Health & Welfare, Pension, Apprenticeship, and Education and Safety.)

8) The Union has requested and the undersigned Company has voluntarily agreed to recognize the Union as the majority representative of its employees performing Operating Engineer work covered by the aforestated Agreement and agrees that the Union has demonstrated that it is the majority representative of such employees in an appropriate collective bargaining unit.

This Agreement shall be effective as of the date set forth and shall remain in full force and effect unless modified by mutual agreement of the parties or until expressly terminated by notice in writing from one party to the other party at least sixty (60) days prior to its anniversary date.

Executed at Willoughby, Ohio (city, state), as of the date first above written.

FOR THE COMPANY
Chagrin Valley Steel Erectors, Inc.
Name (Printed)
4500 Hamann Pkwy
Address
Willoughby, OH 44094
City  State  Zip
440-975-1554
Area Code/Telephone Number
Victoria S. Ruble
Authorized Representative (Signature)
Victoria S. Ruble
Authorized Representative (Printed)

FOR THE UNION
Business Manager
Richard E. Dalto
President
District Representative

JK



# International Union of Operating Engineers

LOCAL 18 AND ITS BRANCHES · SERVING OHIO

THIRTY-FIVE FIFTEEN PROSPECT AVENUE · CLEVELAND, OHIO 44115-2649

(216) 432-3138   FAX: (216) 432-0370

Patrick L. Sink
Business Manager

## 2000 HOUR ADDENDUM AGREEMENT

CODE NO: 0009243b
NEW ___ OLD ✓
ASSIGNED BY K?

This Addendum Agreement is in consideration of and as a condition precedent to entering into one or all of the following collective bargaining agreements:

A. The AGC of Ohio Building Agreement, May 8, 2013 through April 30, 2017
B. Ohio Highway Heavy Agreement, May 8, 2013 through April 30, 2017
C. Construction Employers Association Agreement, May 1, 2012 through April 30, 2015

The International Union of Operating Engineers, Local 18 and _Chagrin Valley Steel Erectors Inc_ (hereafter Employer) therefore agree as follows:

1. That, the undersigned employer, will designate the operation of its construction equipment to a named Principal Operating Engineer;

2. That, when the employer assigns a second operating engineer on another piece of equipment or assigns someone other than the Principal Operating Engineer on any piece of equipment the employer agrees to abide by all the terms and conditions contained in the aforementioned collective bargaining agreements as to hours, wages, fringes and other conditions of employment;

3. That, the employer, will pay on behalf of the Principal Operating Engineer a minimum of 2000 hours per signatory year into the Ohio Operating Engineers Health and Welfare Plan;

4. That, the employer shall transmit all fringe benefit payments in accordance with the terms and conditions of the collective bargaining agreement and the payment protocols of the Fringe Benefit Fund. Payments of the minimum 2000 hours, referenced in paragraph 3 above, into the Health and Welfare Plan shall be per signatory year at a minimum of 500 hours per quarter. All other payments into the Pension Fund, the Apprenticeship Fund and the Safety Training and Education Trust Fund shall be based upon all hours paid to the Principal Operating Engineer; and,

5. The undersigned employer hereby designates _Anthony Deon_ as its Principal Operating Engineer and agrees that it shall notify in writing Local 18 of any change in said designation not more than 90 days nor less than 60 days before the expiration of any signatory year.

6. The failure of the undersigned employer to abide by the payment terms as mandated in paragraph 4 above is a material breach of this agreement and will result in either or both the Fringe Benefit Fund's refusal to accept any payment for a lesser amount and Local 18's cancellation of the collective bargaining agreement referenced above.

Date: 3/31/14

Chagrin Valley Steel Erectors, Inc.
Name of Employer

By: _____
Employer Authorized Representative

Subscribed before me a notary public this 31st day of March, 2014

Nancy Janke
Notary Public - Ohio
My commission expires 5-2-18

_____
Notary Public

Revised December 2013

**From:** Jim Fantozzi <jfantozzi@infinityconstruction.com>
**Date:** November 10, 2016 at 10:25:07 PM EST
**To:** "'John Ruple'" <john.ruple@sbcglobal.net>
**Subject: FW: Chagrin Valley Steel Erectors**

Need to call me tomorrow on this.

**From:** Charlie Izzo
**Sent:** Thursday, November 10, 2016 3:56 PM
**To:** George Nemeth
**Cc:** Jim Fantozzi
**Subject:** FW: Chagrin Valley Steel Erectors
**Importance:** High

Attached is a letter from Operating Engineers telling us that Chagrin Valley owes over $60,000 in benefits to the union.
It is my understanding that we recently changed our subcontracts on 2 jobs, oddly enough, one of them being the Operating Engineers Training facility from Chagrin Valley to Rupple.

Whatever the dangerous game that John and Vicki are playing is we want no part of it. Patrick told the Operating Engineers that we currently have no contracts with Chagrin Valley.

Please tell John and Vicki to get this rectified ASAP or we will hold payments on the Operating Engineers project and cease awarding them any more work.



**Infinity Construction Co., Inc.**
**Charles A. Izzo**
**President**
216-663-3777
216-663-3778 Fax
**B U I L D I N G . . .**
**. . . Experience, Excellence, Commitment**
www.infinityconstruction.com



**From:** Patrick Smith
**Sent:** Thursday, November 10, 2016 2:31 PM
**To:** Charlie Izzo
**Subject:** FW: Chagrin Valley Steel Erectors


**Patrick Smith, CPA, MBA** | Controller
**Infinity Construction Co., Inc.** | phone 216.510.6183 | fax 216.663.3778
www.infinityconstruction.com



**From:** Justin Helmick [mailto:justinhelmick@ooefbp.com]
**Sent:** Wednesday, November 02, 2016 4:07 PM
**To:** Patrick Smith
**Subject:** Chagrin Valley Steel Erectors

Patrick,

　　　　Hello, per our conversation Infinity Const. has Chagrin Valley Steel Erectors Inc. sub-contracting on a project at the Local 18 Richfield Training Site. Unfortunately Chagrin is not in good standing with our office. Attached is a letter stating the balance of contributions owed. Any help in this matter to get them paid in full would be greatly appreciated. Let me know if you require any additional information.

Thanks,



**Justin Helmick | Field Representative**
**Ohio Operating Engineers Fringe Benefit Programs**
1180 Dublin Road | PO Box 12009 | Columbus, Ohio 43212-0009
justinhelmick@ooefbp.com | 330-620-5210
614-488-3720 Main Fax | 614-487-1681 Claims Fax





# OHIO OPERATING ENGINEERS
## FRINGE BENEFIT PROGRAMS

1180 Dublin Road
PO Box 12009
Columbus OH 43212-0009
614.488.0708

Carol A. Wilson
Administrator

October 26, 2016

CHAGRIN VALLEY STEEL ERECTORS INC
4500 HAMANN PKWY
WILLOUGHBY OH 44094-5630

#000924300-1

To Whom It May Concern:

This letter will acknowledge the receipt of your check #13652 in the amount of $2,672.17, along with your reports for the weeks ending August 10, 2016 and August 17, 2016. In accordance with our policy, this check has been applied against the oldest amounts outstanding on your account as follows:

| | |
|---|---|
| Balance of Audit Finding for the Period of 5/14 to 8/15 | $ 678.16 |
| Against Late Charges for the Period of 5/14 to 8/15 | 1,781.24 |
| PAC/PEP for the w/e 8/10/16 and 8/17/16 | 17.10 |
| Local 18 Dues for the w/e 8/10/16 and 8/1716 | 195.67 |
| | $2,672.17 |

After the application of the above check, a balance of $60,404.91 now remains due on your account to complete payment of the following:

| | |
|---|---|
| Balance of Late Charges for the Period of 5/14 to 8/15 | $ 8,805.12 |
| Contributions for the w/e 8/5/15 - 8/17/16 | 51,599.79 |
| | $60,404.91 |

Please submit your check in payment of this outstanding balance. If you have any questions concerning your account, please contact our office.

Sincerely,

*Samantha Polsinelli*

Samantha Polsinelli
Assistant Administrator

SP/sm

cc: District #1
    Richard E. Dalton
    Justin Helmick √
    Bryan C. Barch, Esq.

HEALTH AND WELFARE PLAN • PENSION FUND • APPRENTICESHIP FUND • EDUCATION AND SAFETY FUND