# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **CAROL A. WILSON**, *et al.*, | ) | Case No.: 2:16-cv-1084 |
| | ) | |
| *Plaintiffs,* | ) | Chief Judge Edmund A. Sargus |
| | ) | |
| *vs.* | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| **CHAGRIN VALLEY STEEL ERECTORS, INC.,** | ) ) | |
| | ) | |
| *Defendant / Third-Party Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | **DEFENDANT / THIRD PARTY** |
| | ) | **PLAINTIFF CHAGRIN VALLEY** |
| **JUSTIN M. HELMICK**, | ) | **STEEL ERECTORS, INC.'S BRIEF IN** |
| | ) | **OPPOSITION TO PLAINTIFFS'** |
| *Third-Party Defendant.* | ) | **PARTIAL MOTION TO DISMISS** |

## INTRODUCTION

Plaintiffs / Counterclaimants and Third Party Defendants Carol A. Wilson, the Trustees of the Ohio Operating Engineers Pension Fund, the Trustees of the Ohio Operating Engineers Health and Welfare Fund, the Trustees of the Ohio Operating Engineers Apprenticeship and Training Fund, and the Trustees of the Ohio Operating Engineers Education and Safety Fund's (together the "Trusts") Partial Motion to Dismiss (the "Motion") is based on the flawed principle that 29 U.S.C. § 1144 (a) (the Employment Retirement Income Security Act of 1974) ("ERISA") expressly preempts all claims that even remotely or tenuously relate to an employee benefit plan. Sixth Circuit case law simply does not support the Trusts' position. The Counterclaim filed by Defendant / Third Party Plaintiff Chagrin Valley Steel Erectors, Inc. ("Chagrin Valley") (the

00425428-1

"Counterclaim") contains more than sufficient factual allegations to support its claim that the Trusts violated their contractual obligations. As such, the Trusts' Motion should be denied.

## THE ALLEGATIONS OF THE COMPLAINT

Chagrin Valley executed the Construction Employers Association Agreement Building Construction Agreement or about June 20, 2012, and the 2000 Hour Addendum Agreement on or about March 31, 2014 (collectively, the "Participation Agreements"). (Counterclaim at ¶ 3.) Pursuant to the Participation Agreements, Chagrin Valley agreed to timely and fully pay all fringe benefit payments and contributions relative to its employees covered by the Participation Agreements. (*Id.* at ¶ 5). These payments are received by the Trusts. (*Id.*)

Chagrin Valley timely and fully made all fringe benefit payments and contributions relative to its employees covered by the Agreements and pursuant to the same policies, methods and calculations it had always used to compensate its employees covered by the Agreements, with the Trusts' full knowledge and acquiescence. (*Id.* at ¶ 6.) The Trusts approved and had no issues with any of its previous audits of Chagrin Valley's payroll records. (*Id.*)

However, on or about July 8, 2014, the Trusts unexpectedly expressed concerns with Chagrin Valley's policies, means and methods for compensating its employees covered by the Agreements - - the same means and methods that the Trusts had previously approved. (*Id.* at ¶ 8.) In response, Chagrin Valley requested further explanations relative to the Trusts' newly-founded concerns. (*Id.* at ¶ 9.) The Trusts did not provide an adequate response. (*Id.* at ¶ 10.) Instead, on or about January 15, 2015, the Trusts advised Chagrin Valley of its retroactive re-determination that, despite previously approving Chagrin Valley's contributions for and the Trusts' audit of the June 2012 – January 2014 payroll records, Chagrin Valley failed to fully pay its fringe benefit obligations pursuant to the Agreements, including the February 2013 through April 2014 and October 2014 through February 2015 payroll periods. (*Id.*)

Chagrin Valley repeatedly requested explanations and details relative to the Trusts' audit "findings," determinations and concerns, to which the Trusts either ignored or failed to satisfactorily respond. (*Id.* at ¶ 11.) Instead, the Trusts continuously provided Chagrin Valley with notifications that, pursuant to its retroactive audit "findings," Chagrin Valley failed to fully pay certain fringe benefit contributions pursuant to the Agreements. (*Id.* at ¶ 12.) As a result, the Trusts also assessed retroactive late fees and penalties for Chagrin Valley's allegedly delinquent contributions. (*Id.*)

Chagrin Valley repeatedly (a) objected to the supposed audit "findings;" (b) requested explanations as to the audit calculations and determinations and its concerns over policies that it previously approved; and (c) provided waivers from employees waiving its rights to certain fringe benefits, to which the Trusts either failed to respond, failed to adequately respond, or responded with revised audit "determinations," to which no, or unsatisfactory, explanations were provided. (*Id.* at ¶ 13.) Chagrin Valley made repeated efforts to obtain a resolution with the Trusts, to which the Trusts either ignored, or responded to with continued unsubstantiated audit "determinations" and increased late fees and penalties. (*Id.* at ¶ 14.)

Meanwhile, Chagrin Valley, at all times, remained current on its contributions and payments pursuant to the Participation Agreements. (*Id.* at ¶ 15.) Despite this, the Trusts applied and continue to apply, all contributions and payments issued by Chagrin Valley to its unilaterally-determined oldest outstanding balance allegedly (and retroactively) due relative to the Participation Agreements, over Chagrin Valley's repeated objections. (*Id.* at ¶ 16.) As a result, Chagrin Valley's current contributions appear delinquent on the Trusts' records, causing Chagrin Valley damages. (*Id.* at ¶ 16.)

Moreover, an agent of the Trusts corresponded with Chagrin Valley's customers and made false, defamatory, and disparaging statements about Chagrin Valley relative to its allegedly

delinquent contributions, specifically to cause harm to Chagrin Valley's reputation and contractual and business relationships, present and future, and to force Chagrin Valley to acquiesce to the disputed audit determinations.  (*Id.* at ¶¶ 16-19.)  The Trusts knew that such actions would interfere with Chagrin Valley's contractual and business relations with their clients and customers, present and future, by causing stressed, unfavorable, reduced or discontinued contractual and/or business relations between Chagrin Valley and its customers and clients, and acted with the intent to interfere with those relations and to coerce and/or force Chagrin Valley to agree to, and pay, the Trusts' disputed audit "determinations."  (*Id.* at ¶¶ 20-21.)  The Trusts acted with the intent to ruin Chagrin Valley's name and reputation, to create scenarios where Chagrin Valley would not receive work, and to extort settlement funds from them.  (*Id.* at ¶ 23.)

Based on the foregoing conduct, the Trusts failed to perform and satisfy their contractual obligations under the Participation Agreements by, but not limited to, (a) improperly calculating its audit determinations of Chagrin Valley's payroll records, (b) re-auditing Chagrin Valley's payroll records and retroactively dishonoring policies and procedures it previously approved, (c) failing to satisfactorily articulate (or, in some cases, articulate whatsoever) its audit determination calculations, (d) failing to adequately respond (or in some cases, respond whatsoever) to Chagrin Valley's repeated efforts to communicate with the Trusts relative to the Agreements; and (e) advancing false statements and positions to third-parties regarding its unilateral and erroneous audit determinations and calculations.  (*Id.* at 27.)

Accordingly, Chagrin Valley filed a counterclaim for breach of the Participation Agreements, declaratory judgment, tortious interference with business relations, and defamation. The Trusts' Motion seeks dismissal of only Chagrin Valley's breach of contract and declaratory judgment claims.

**DISCUSSION**

In deciding a Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted, the Court tests only the legal sufficiency of the plaintiff's claim. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993). *See also, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (clarifying the legal standard for a Rule 12(b)(6) Motion to Dismiss). When determining whether a pleading has stated a claim upon which relief may be granted, the Court must construe the pleading in the light most favorable to the plaintiff, accept all factual allegations to be true and determine whether the pleading contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claimant is not required to prove, beyond a doubt, that the factual allegations in the complaint entitle him to relief, but must demonstrate that the "[f]actual allegations [are] enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true." *Id.* at 555. *See also Daina v. Carrington Mortg. Servs.*, LLC, No. 1:17 CV 496, 2017 U.S. Dist. LEXIS 102208, at *4-5 (N.D. Ohio June 30, 2017).

    **A. Chagrin Valley's breach of contract claim is not preempted by ERISA.**

Here, the Counterclaim alleges that the Trusts breached the terms of the various Participation Agreements that were signed by Chagrin Valley, namely the Construction Employers Association Agreement, the Short Form Building Construction Agreement, and the 2000 Hour Addendum Agreement on or about March 31, 2014. (Counterclaim at ¶ 3, ¶ 27.) The Trusts are intended third-party beneficiaries of these Participation Agreement. (*Id.* at ¶ 26.) In opposition, the Trusts do not contend that they did not breach the terms of the Participation Agreements or that they are not bound by the Participation Agreements. Instead, the Trusts base their partial motion to dismiss on the sole argument that Chagrin Valley's breach of contract claim should be dismissed because they are preempted by ERISA. The burden is on the Trusts to

prove, as an affirmative federal defense, the facts necessary to establish that state law claims are preempted as a matter of law.  *Garon v. Unum Life Ins. Co. of Am.*, No. 10-12627, 2011 U.S. Dist. LEXIS 47874, at *5 (E.D. Mich. May 4, 2011).  The Trusts have failed to meet this burden at this stage of the proceedings.

As a preliminary matter, Chagrin Valley's breach of contract claim against the Trusts relates only to the Participation Agreements.  The Participation Agreements do not constitute and are not part of an ERISA plan.  Whether an ERISA plan exists is a question of fact "to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person." *Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 479, (6th Cir. 2007).  As the Southern District of Ohio explained, "participation agreements, standing alone, are not [ERISA plans]."  *Slye v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 956 F. Supp. 1357, 1367 (S.D. Ohio 1997).  "There is nothing in the participation agreements which speaks to either the provision of specific benefits to participants or which addresses a procedure for applying for and collecting such benefits [and] plaintiffs have not alleged that the participation agreements themselves fall within the statutory definition of a 'plan.'"  *Id.*

As such, Chagrin Valley's breach of contract claim does not seek recovery of an ERISA plan benefit and is not an "end run" around ERISA's enforcement mechanism.  *See Lion's Volunteer Blind Indus., Inc. v. Automated Group Admin., Inc.,* 195 F.3d 803, 806 (6th Cir. 1999) (explaining that, in deciding whether state law claims are preempted by ERISA, courts focus on the remedy sought by plaintiff).  In fact, any impact that Chagrin Valley's breach of contract claim has on an ERISA plan is "merely tenuous, remote or peripheral."  *Shaw v. Delta Airlines*, 463 U.S. 85, 100 n.21, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983) ("Nevertheless, the Court has made clear that some state laws might affect ERISA-governed plans in a way that is 'too tenuous, remote, or peripheral' to say that they 'relate to' the plan").  The United States Supreme

Court and the Sixth Circuit have clearly established that claims with a negligible impact on ERISA plans are not preempted.  For example, in *Peters*, the court held that a wrongful discharge claim which included incidental damages for loss of benefits under an ERISA-based plan was not preempted because all that was needed was a simple mathematical calculation of benefits, and the claimed damages thus related only "peripherally" to the ERISA plan.  *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002).

In stark contrast to the cases cited by the Trusts in the Motion, Chagrin Valley's breach of contract claim does not relate to the Trusts' administration of benefits to participants.  Instead, Chagrin Valley's claim relates only to the Trusts' breach of contractual obligations owed to Chagrin Valley under the Participation Agreements.  A holding that such a claim is preempted would render the Participation Agreements entirely one sided as Chagrin Valley would have no avenue for seeking protection from the Trusts' flagrant disregard of their contractual obligations and Chagrin Valley's rights, including Chagrin Valley's ability to challenge the Funds' mathematical calculations.  *See Bd. of Trs. of the Hotel & Rest. Empls. Local 25 v. Madison Hotel*, 321 U.S. App. D.C. 145, 97 F.3d 1479 (1996) ("A due process violation may result when there is no court, state or federal, that is available to hear a plaintiff's claim.")

**B. Chagrin Valley's declaratory judgment claim is sufficient.**

Chagrin Valley states a valid and sufficient claim for a declaration from the Court as to its rights and obligations under the Participation Agreements.

The Declaratory Judgment Act provides that "[i]n case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  As illustrated by the court in *Allen v. Andersen Windows, Inc.*, 913 F.

Supp. 2d 490, 516 (S.D. Ohio 2012), a case cited by the Trusts in the Motion, a declaratory judgment claim is appropriate where the parties' rights under a contract are in dispute.

Here, it is beyond dispute that there is an actual controversy regarding the rights and obligations of the Trusts and Chagrin Valley under the Participation Agreements. There is simply no support in Sixth Circuit case law for the Trusts' contention that a request for declaratory judgment is inappropriate under these circumstances. As such, the Motions should be denied with respect to Count II of the Counterclaim.

## CONCLUSION

The Trusts have not satisfied their burden to show that Count I (breach of contract) is preempted by ERISA or that Count II (declaratory judgment) fails to state a claim for relief, and accordingly the Partial Motion to Dismiss must be denied.

Respectfully submitted,

*/s/   Melissa A .Jones*
Andrew J. Natale (0042110)
Melissa A. Jones (0074967)
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, OH  44114
216.515.1660; Facsimile: 216.515.1650
anatale@frantzward.com
mjones@frantzward.com

*Attorneys for Defendant / Third-Party Plaintiff Chagrin Valley Steel Erectors, Inc.*

## **CERTIFICATE OF SERVICE**

  A copy of the foregoing was filed electronically on August 15, 2017.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

            /s/ *Melissa A. Jones*
            *One of the Attorneys for Defendant /*
            *Third-Party Plaintiff*