# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **Carol A. Wilson,** *et al* | Case No.: 2:16-cv-1084 |
| *Plaintiffs,* | Chief Judge Edmund A. Sargus |
| *vs.* | Magistrate Judge Kimberly A. Jolson |
| **Chagrin Valley Steel Erectors, Inc.,** | |
| *Defendant/Third Party Plaintiff,* | |
| *vs.* | |
| **Justin M. Helmick,** | |
| *Third-Party Defendant.* | |

## CAROL A. WILSON, ET AL., PLAINTIFFS, AND THIRD-PARTY DEFENDANT JUSTIN HELMICK'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Carol A. Wilson and the Trustees of the Ohio Operating Engineers Health and Welfare Plan, the Ohio Operating Engineers Pension Fund, the Ohio Operating Engineers Education and Training Fund, and the Ohio Operating Engineers Apprenticeship Fund (the "Funds") move the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment in their favor and against Defendant Chagrin Valley Steel Erectors, Inc. There exists no genuine issue as to any material fact in this case, and the Funds are entitled to judgment on all claims in the Complaint.  The Funds and Third-Party Defendant Mr. Justin Helmick are also entitled to summary judgment on both claims asserted against them by Chagrin Valley Steel Erectors, Inc.

Respectfully submitted,

/s/Daniel J. Clark
Daniel J. Clark (0075125), Trial Attorney
Elizabeth B. Howard (0092585)
Vorys, Sater, Seymour and Pease LLP

52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone: (614) 464-6436
Facsimile: (614) 719-4650
djclark@vorys.com
ebhoward@vorys.com

*Attorneys for Plaintiffs and Mr. Justin Helmick*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Carol A. Wilson,** *et al* | ) | Case No.: 2:16-cv-1084 |
| | ) | |
| *Plaintiffs,* | ) | Chief Judge Edmund A. Sargus |
| | ) | |
| *vs.* | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| **Chagrin Valley Steel Erectors, Inc.,** | ) | |
| | ) | |
| *Defendant/Third Party Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | |
| | ) | |
| **Justin M. Helmick,** | ) | |
| | ) | |
| *Third-Party Defendant.* | ) | |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

Plaintiffs are the Administrator and Trustees of the Ohio Operating Engineers Health and Welfare Plan, the Ohio Operating Engineers Pension Fund, the Ohio Operating Engineers Education and Safety Fund, and the Ohio Operating Engineers Apprenticeship Fund (the "Funds"). The Funds are jointly-administered, multiemployer fringe benefit programs established for the benefit of employees of contractors who perform work pursuant to an agreement with the International Union of Operating Engineers, Local Nos. 18, 18A and 18B (the "Union"). The Administrator of the Funds is Plaintiff Carol A. Wilson. The Funds provide health and welfare, retirement, and other fringe benefits to their beneficiaries.

Pursuant to collective bargaining agreements entered into with the Union, Defendant Chagrin Valley Steel Erectors, Inc., ("Chagrin Valley") is obligated to make fringe benefit

contributions to the Funds on behalf of its employees.  The Funds' field auditor audited Chagrin Valley's payroll records on October 31, 2016 and determined that Chagrin Valley had failed to pay a significant amount of fringe benefit contributions owed under the collective bargaining agreements.  Compl. ¶¶ 6–7, ECF No. 1; Aff. of Carol A. Wilson ¶ 6.[1]  The Funds filed suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3) & 1145 to recover these unpaid contributions.  Compl. ¶ 1, ECF No. 1. Chagrin Valley then asserted various claims against the Funds and Mr. Justin Helmick, employee and field representative of the Funds.  These include counterclaims against the Funds for breach of contract and declaratory judgment, Chagrin Valley's Second Amended Counterclaim & Second Amended Third-Party Compl. ¶¶25–28 & ¶¶29–34, ECF No. 29.  Chagrin Valley further asserted claims of defamation and tortious interference with business relations against the Funds and Mr. Helmick.  Id. ¶¶35–38 & ¶¶39–43.

The Funds request that the Court grant summary judgment in their favor and order Defendant Chagrin Valley Steel Erectors, Inc. to pay all contributions due under the collective bargaining agreements as well as all other relief pled in the Funds' Complaint.  The Funds and Mr. Helmick further request that the Court grant summary judgment in their favor as to all of Chagrin Valley's claims.

## II.   STATEMENT OF FACTS

### A.    The Fringe Benefit Funds

The Funds are jointly-administered, multiemployer fringe benefit programs established for the benefit of employees of contractors who perform work pursuant to collective bargaining agreements with the Union (the "CBA").  Plaintiff Carol A. Wilson is the Administrator of the

---

[1] The Affidavit of Administrator Carol A. Wilson is attached hereto as Exhibit A.

Funds.  Aff. of Carol A. Wilson ¶ 1.  The Funds are third-party beneficiaries to the CBA.  The Funds rely upon employer contributions to provide pension, health and welfare and other fringe benefits to employees and operating engineers working for these signatory contractors.

### B.    Chagrin Valley Steel Erectors, Inc.

Defendant Chagrin Valley Steel Erectors, Inc. is a business performing work in the construction industry.  On April 23, 2012, Chagrin Valley entered into a collective bargaining agreement with the Union by signing a one-page Interim Construction Employers Association Agreement.  This one-page obligates Chagrin Valley, as a signatory, to comply with all the terms of the Construction Employers Association Building Agreement between the Construction Employers Association and the Union.   Compl. Ex A at 1, ECF No. 1; Wilson Aff. ¶ 2.  Specifically, the interim agreement states that the "undersigned employer . . . does hereby agree to adopt, accept and become signatory to the CEA Building collective bargaining agreement between the Construction Employers Association and the International Union of Operating Engineers, Local 18 and its Branches."  Compl. Ex A at 1, ECF No. 1; Wilson Aff. ¶ 2.  Victoria Ruple, President of Chagrin Valley, subsequently signed a State of Ohio Short Form Building Construction Agreement on June 20, 2012 that also obligated Chagrin Valley to adopt and accept all the terms of the CBA.  Deposition of Victoria Ruple, p. 14 ln. 15;[2]  see also Compl. Ex. A. at 2; Wilson Aff. ¶ 2.   That short form agreement further required Chagrin Valley "to make contributions to the Health and Welfare Fund, Pension Fund, Apprenticeship Fund, and Safety Training and Education Trust Fund as outlined in said CEA Building Agreement."  Compl. Ex. A. at 2; Wilson Aff. ¶ 2.  Ms. Ruple stated that Chagrin Valley signed on to the CBA because the

---

[2] The full text of Ms. Ruple's deposition dated July 19, 2017 is attached hereto as Exhibit B.  This deposition will be referenced throughout this Motion as "Ruple Deposition."

company had purchased a crane and required an operating engineer to operate it.  Ruple

Deposition, p.25 ln. 2–11.  Although she signed the CBA on that date, Ms. Ruple did not read it

before accepting its terms and in fact has not read the CBA to date.  Ruple Deposition, p.16 ln.

11–13.[3]

The CBA requires signatories to make contributions based on all hours paid to employees

who perform any covered work.  Specifically, the CBA provides:

> Fringe benefit contributions shall be paid at the following rate **for all
> hours paid** to each employee by the Employer under this Agreement
> which shall in no way be considered or used in the determination of
> overtime pay.  Hours paid shall include holidays and reporting hours
> which are paid.

Ex. 1 to Wilson Aff., ¶39 (emphasis added).[4]  This language has remained unchanged in the CBA

for decades and has been consistently held by this Court, and most recently by the Sixth Circuit,

as requiring contributions be paid based upon all hours paid to the employees.  See, e.g., Bunn

Enters. v. Ohio Operating Eng'rs Fringe Benefit Programs, 606 Fed. App'x 798, 804 (6th Cir.

2015) ("Accordingly, we find that the CBA unambiguously requires employer signatories to

contribute the appropriate benefits contributions for all hours worked by their employees,

regardless of whether those hours are 'covered' under the contract.").

Chagrin Valley hired operating engineers through the Union and paid some fringe

benefits to the Funds.  Chagrin Valley self-reported these hours through weekly reports submitted

---

[3] The fact that Ms. Ruple has not read the CBA is not a defense to owing contributions.  See, e.g., Wilson v. Bridge
Overlay Systems., 129 F. Supp 3d 560, 572 (S.D. Ohio 2015) (stating that failure to read or receive the CBA was not
a defense to owing delinquent contributions because "[i]t will not do for a man to enter into a contract, and, when
called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it
contained.  If this were permitted, contracts would not be worth the paper on which they are written.  But such is not
the law.  A contractor must stand by the words of his contract; and, if he will not read when he signs, he alone is
responsible for his omission." (citations omitted)).

[4] The full text of the 2012-2015 Building Construction Agreement is attached to the Wilson Affidavit as Exhibit 1.
The full text of the 2015-2019 Building Construction Agreement is attached to the Wilson Affidavit as Exhibit 2.

to the Funds.  Related to this Action, Chagrin Valley reported on and made some fringe contributions for operating engineers Daniel Pritchard, Anthony Urch and Patrick Ritchie.  Ruple Deposition, p.26 ln. 6 (explaining that Chagrin Valley had made contributions for Daniel Pritchard, Anthony Urch and Patrick Ritchie based on hours they worked operating a crane).

As stated by Ms. Ruple, Chagrin Valley has consistently only made contributions to the Funds for hours worked by employees performing covered work in direct contradiction to the plain terms of the CBA:

> Q:  Do you know how the amount of contributions are calculated?
>
> A:  It's based on their [the employees'] hours.
>
> Q:  What hours?
>
> A:  Based on their hours worked to the Union.
>
> . . .
>
> Q: [Reading from a December 16, 2013 letter from Chagrin Valley's legal counsel to the Union's legal counsel] "With regard to the three family members, very little of their actual time is involved in operating a crane.  The majority of their time is on the shop floor doing maintenance repair work and/or fabricating steel."  Do you know whether or not Chagrin Valley made contributions to the Fringe Benefit Funds for those three family members  for their time spent doing maintenance repair work?
>
> A:  I would have to check my records.
>
> Q: Would it – was it your [Chagrin Valley's] practice to make fringe benefit contributions for all hours that were paid to the employees, or just for their time spent operating a crane?
>
> A:  Just their time spent operating the cranes.

Ruple Deposition, pp. 26–28.  Thus, it was Chagrin Valley's practice to self-report contributions only on hours paid to employees where the employee is performing covered work (like operating a crane).

**C.       The Funds' Audit Revealed Unpaid Contributions.**

The CBA requires signatories to pay fringe benefit contributions to the Funds based upon all hours <u>paid</u> to employees who perform work covered by the CBAs, <u>i.e.</u>, the work of an operator.  Wilson Aff. ¶ 2; CBA¶¶ 37–44.  The Funds conduct periodic audits to insure that signatories are making these contributions as required by the CBA.

The Funds conducted an audit of Chagrin Valley's payroll records on October 31, 2016.  Compl. ¶ 6, ECF No. 1; Wilson Aff. ¶ 6.  Ms. Ruple was present for the audit and provided records to the auditor.  Ruple Deposition, p. 29, ln. 17–19.  Ms. Ruple provided the auditor with payroll and earnings records so that he could compare hours Chagrin Valley had reported to the Funds with all hours Chagrin Valley had actually paid to those employees.  Ruple Deposition, pp. 30–31.  The audit covered the period of August 1, 2015 to October 1, 2016.  Compl. ¶ 8, ECF No. 1; Wilson Aff. ¶ 6.  Ms. Ruple stated that these payroll and earnings records were true and accurate.  Ruple Deposition, p. 31, ln. 5–9.

The auditor compared the hours paid to employees on Chagrin Valley's payroll records with the number of hours that Chagrin Valley reported to the Funds.  Wilson Aff. ¶ 6.  The audit demonstrated that there were a significant number of hours paid to operators during the audit period for which contributions had not been made.  Compl. ¶¶ 12, 17, 22 and 27, ECF No.1; Wilson Aff. ¶ 6.

## III.    <u>LAW AND ARGUMENT</u>

**A.       Standard of Review.**

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment is appropriate if the movant shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A fact is deemed

6

material only if it "might affect the outcome of the lawsuit under the governing substantive law." Wiley v. United States, 20 F.3d 222, 224 (6th Cir. 1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).  The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339–40 (6th Cir. 1993).  The suggestion of a mere possibility of a factual dispute is insufficient to death a motion for summary judgment.  See Mitchell v. Toledo Hospital, 964 F.2d 577, 582 (6th Cir. 1992) (citing Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir. 1986)).

> **B.** **Fringe Benefit Contributions Are Due to the Funds Based on All Hours Paid to Chagrin Valley's Operators.**
>
> 1. The Funds are contractually and statutorily entitled to the delinquent contributions.

Chagrin Valley is contractually and statutorily obligated to make contributions to the Funds for all hours paid to Chagrin Valley's operators.  The Funds seek delinquent contributions owed pursuant to the CBA and ERISA sections 502 and 515.  The Funds are entitled to recover from Chagrin Valley said delinquent contributions as well as other remedies provided for in the CBA and under ERISA, including interest, statutory interest under ERISA section 502(g), reasonable attorneys' fees, and other costs.

First, Chagrin Valley is contractually obligated to pay any delinquent contributions pursuant to the CBA.  Defendant became a signatory to the CBA on April 23, 2012 when it executed a one-page Interim Construction Employers Association agreement.  See Compl. Ex. A at 1, ECF No. 1; Wilson Aff. ¶ 2. The one-page Construction Agreement states that "[Chagrin Valley Steel Erectors, Inc.] does hereby adopt, accept and become signatory to the CEA Building collective bargaining agreement between the Construction Employers Association

and the [Union]." Compl. Ex. A. at 1, ECF No. 1.  The one-page agreement goes on to state that Defendant agrees to "be bound to the newly negotiated agreement and to pay without exception all newly negotiated CEA increased wages, fringes and other terms retroactive to May 1, 2012." Compl. Ex. A. at 2.    The one-page Short Form Building Construction Agreement contains similar language: "The Company further agrees to make contributions to the Health and Welfare Fund, Pension Fund, Apprenticeship Fund and Safety Training and Educational Trust Fund as outlined in said CEA Building Agreement." Compl. Ex. A. at p. 2 ¶ 3, ECF No. 1.  Thus, by signing the CBA, Chagrin Valley became contractually bound to the fringe benefits contribution requirements in the CBA.

The CBA expressly requires signatory employers to make contributions to the Funds based on all hours paid to covered employees. The CBA provides:

> Fringe benefit contributions shall be paid at the following rates for all hours paid to each employee by the Employer under this Agreement which shall in no way be considered or used in the determination of overtime pay.  Hours paid shall include holidays and reporting hours which are paid.

CBA at ¶ 39.  This language requires signatories to make contributions based upon all hours paid to employees.  Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs, Case No. 14-3255, 606 F. App'x 798 (6th Cir. 2015).  In Bunn, the Sixth Circuit held that this exact language "unambiguously requires employer signatories to contribute the appropriate benefits contributions for all hours worked by their employees, regardless of whether those hours are 'covered' under the contract."  Id. at 804; see also Wilson v. Bridge Overlay Systems, Inc., 129 F. Supp. 3d 560, 576–77 (S.D. Ohio Sept. 15, 2015) (citing Bunn).

In reaching its holding in Bunn, the Sixth Circuit relied upon and affirmed decades of precedent in the Southern District of Ohio.  For example, in Orrand v. Shope, the Court noted

8

that it had on several occasions "construed the exact language at issue here," and "ha[d] consistently reached the . . . conclusion" that the obligation of the employer to make fringe benefit contributions "extends to all hours paid." Orrand v. Shope, No. 2:00-CV-1161, 2001 WL 1763437, at *3 (S.D. Ohio Jan. 30, 2001) (Sargus, J.). The Court reasoned that the language of the CBA strongly supported this interpretation, as it requires contributions to be made for "all hours paid to each employee by the employer, without making a distinction between hours paid for covered employment and hours paid for other work." Id. at *2. This Court further explained that the benefits to a union and to trust funds from such language is "obvious, since if an employer were entitled to reduce the amount of benefits paid based on hours spent in non-covered work, and if the employer were the sole arbiter of what type of work was performed, and its records the only source of that information, it would be "exceedingly difficult for a fund to dispute an employer's allocation of hours between covered and non-covered work, and it would therefore be possible for an employer to skew its records in such a way as to minimize its contributions." Id. This interpretation, then, reduces or even eliminates the "ability to manipulate the facts," and simplies the audit process. Id.

As stated by Ms. Ruple, Chagrin Valley clearly was not making contributions as required by the CBA. Chagrin Valley was making contributions only for covered work, not for all hours paid to its employees. Ruple Deposition, p. 26–28. This practice not only violates the unambiguous language of the CBA, but it also violates decades of precedent interpreting that unambiguous language. Because there is no question of fact as to this contractual issue, this Court should rule for the Funds and order Chagrin Valley to pay all delinquent contributions as required by the CBA.

      2.   <u>Chagrin Valley Also Has a Statutory Obligation To Make Fringe Benefit Contributions and To Pay Interest and Liquidated Damages.</u>

In addition to its obligation under the CBA, Chagrin Valley has a statutory obligation pursuant to 29 U.S.C. § 1145 to make the fringe benefit contributions at issue in this case. Section 1145 (ERISA § 515) creates a statutory obligation for participating employers to make fringe benefit contributions in accordance with the terms and conditions of the plans or collective bargaining agreements by which they are obligated to multi-employer fringe benefit funds.  It provides as follows:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

<u>See</u> 29 U.S.C. § 1145.  Thus, once Chagrin Valley's contractual obligation to the Funds became effective, Chagrin Valley assumed not only a contractual obligation but also a duty under ERISA to make timely and accurate fringe benefit contributions and to otherwise comply with the terms and conditions of the plans, trusts and collective bargaining agreements.

This Court has held in similar cases that the trustees for multiemployer funds may recover delinquent fringe benefit contributions, interest, statutory interest, attorneys' fees, and court costs as part of a judgment against a delinquent employer.  <u>See, e.g.</u>, <u>Orrand v. Scassa Asphalt, Inc.</u>, 794 F.3d 556, 560 (6th Cir. 2015) (affirming district court ruling and ordering employer signatory to pay statutory delinquent fringe benefit contributions, statutory interest under 29 U.S.C. §§1132(g)(2)(B)–(C), court costs, and attorneys' fees).

ERISA requires district courts to award trust funds not only the unpaid contributions, but also interest on those unpaid contributions, attorneys' fees, court costs, and an additional amount

of statutory interest or liquidated damages when they succeed in obtaining a judgment against a

delinquent employer.  That section provides as follows:

> In any action under this title by a fiduciary or on behalf of a plan to enforce Section 515 in which a judgment in favor of the [Fund] is awarded, **the court shall award the plan** --
>
> (A)    the unpaid contributions,
>
> (B)    interest on the unpaid contributions,
>
> (C)    an amount equal to the greater of --
>
>> (i)    interest on the unpaid contributions, or
>>
>> (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D)    reasonable attorneys' fees and costs of the action, to be paid by the Defendants, and
>
> (E)    such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of the Internal Revenue Code of 1986.

29 U.S.C. § 1132(g) (emphasis added).  Thus, this section mandates that the Funds be

awarded, in addition to delinquent contributions, the following additional categories of

damages:

> (1)    reasonable attorneys' fees;
>
> (2)    costs of the action;
>
> (3)    interest on the unpaid contributions at the rate provided for in the plan documents; and

      (4)    the greater of liquidated damages (called "late charges" by Plaintiffs) in an amount specified in the employee benefit plan not in excess of 20% of the unpaid contributions (Plaintiffs use 18% for late charges) or interest on the unpaid contributions.

Accordingly, the Funds are entitled, in addition to an award of delinquent contributions and interest, to a statutory award of the greater of interest or liquidated damages. The Funds require all employers to pay late charges, or liquidated damages, for their delinquent contributions at a rate of 18% per year. Wilson Aff. ¶ 4. Because the Funds also charge an 18% interest rate, this number is the same for purposes of the statute.

Chagrin Valley continued to make some weekly contributions following the assessment of delinquent contributions during the audit period. These contributions have been applied to Chagrin Valley's oldest outstanding balance consistent with the Funds' policy. Chagrin Valley has also continued to underpay contributions since the end of the audit period. Chagrin Valley currently owes delinquent contributions to the Funds in the amount of $60,661.00; interest in the amount of $11,154.47, calculated to August 9, 2017, plus $13.83 per day thereafter; statutory interest in the amount of $11,154.47, calculated to August 9, 2017, plus $13.83 per day thereafter; plus attorneys' fees and costs. The Funds seek summary judgment in this amount.[5] Wilson Aff. ¶ 6.

## C.    **Chagrin Valley's Conduct Entitles the Funds to Injunctive Relief**

In her deposition, Ms. Ruple stated that Chagrin Valley continues to pay contributions to the Funds only for covered work instead of for all hours paid:

      Q:  How about for anybody other than Tony Urch , is that – is Chagrin Valley making contributions for only their hours spent operating equipment?

      A:  Yes.

---

[5] The Funds will seek attorneys' fees and costs pursuant to a post-judgment motion. 29 U.S.C. § 1132(g)(2).

> Q:  And has that been your consistent practice from the time that you first entered into a collective bargaining agreement **through today**, with the exception of Mr. Urch?
>
> A:  As far as I know, yes.

Ruple Deposition, p. 27–28 (emphasis added).[6]  Chagrin Valley has continued to underpay contributions from the end of the audit period through the present date.  The Funds respectfully request the Court to grant injunctive relief: (a) to require Chagrin Valley to submit to an additional audit for the time period of October, 2016 through the date a decision is rendered and to pay all delinquent contributions revealed by that audit; and (b) to order Chagrin Valley to make contributions to the Funds for all hours paid from the date of judgment forward.

"Courts should not be grudging with respect to the entry and scope of injunctive relief under a statute where Congress expressly authorized it."  United States v. City of Parma, 504 F. Supp. 913, 917 (N.D. Ohio).  In Laborers Fringe Benefit Funds - Detroit & Vicinity v. Northwest Concrete & Constr. Inc., 640 F.2d 1350 (6th Cir. 1981), the Sixth Circuit held that under the plain language of Section 502(a)(3) of ERISA, the trustee of an employee benefit plan was entitled to an injunction preventing a recalcitrant employer from failing to comply with benefit payment provisions of a labor agreement in light of the fact that evidence indicated that:  the employer was likely to continue to withhold employee benefit contributions from the plan; that continued violations of labor agreements and ERISA would irreparably injure the benefits plan, and that permanently enjoining the employer from such violations did not contravene public

---

[6] In the errata sheet completed by Ms. Ruple following her deposition, she attempted to alter this cited testimony by converting her "Yes" to a "No."  See Ruple Deposition Errata Sheet, attached hereto as Exhibit C.  This substantive change is not permitted under Rule 30(e) of the Federal Rules of Civil Procedure and the errata sheet should be stricken.  See, e.g., McClendon v. Hightowers Petroleum Co., 2016 U.S. Dist. LEXIS 64248, at *3 (S.D. Ohio May 16, 2016) ("Rule 30(e) does not allow one to alter what was said under oath. Were that the case, one could merely answer the questions with no thought at all, then return home and plan artful responses.  Depositions differ from interrogatories in that regard.  A deposition is not a take home examination." (quoting Trout v. FirstEnergy Generation Corp., 339 Fed. App'x 560, 565 (6th Cir. 2009))).

policy.  The court observed that other federal courts have granted injunctive relief under Section 502 to participants and beneficiaries under ERISA to enjoin employers from refusing to comply with employee fringe benefit contribution provisions of labor agreements.  See, e.g., Operating Engineers Central Pension Fund v. Joski Construction Co. Inc., 441 F. Supp. 849 (E.D. Wis. 1977).

Chagrin Valley's conduct warrants the finding that it will continue to withhold contributions from the Funds.  Specifically, at her deposition in July of 2017, President Victoria Ruple admitted that Chagrin Valley continues to make contributions only for hours spent performing covered work.  Ruple Deposition, p. 27–28.  Chagrin Valley's wanton disregard for its obligations is obvious.  Ms. Ruple acknowledged at her deposition — after months of litigation with the Funds — that she still has not read the CBA.  Nonetheless, she insists that she has been making payments correctly under its terms.  Thus, it is highly probable that absent a Court order Chagrin Valley will continue to avoid its contractual obligations.

Continued violations of the CBA will irreparably injure the Funds and the public.  Other union contractors that pay contributions to the Funds in a timely manner are placed at a competitive disadvantage to Chagrin Valley, which has the benefit of being a union contractor while not bearing the same burden to provide fringe benefits to its employees.    Finally, permanently enjoining Chagrin Valley from violations of the relevant provisions of the CBA would not contravene public policy.  Chagrin Valley has the option to terminate the CBA.  As long as it take the benefits of the CBA it must also meet the obligations that go with it.

The Audit Period for which judgment is sought ended on October 1, 2016.  Wilson Aff. ¶ 6.  Chagrin Valley has not reported to the Funds all hours paid to its operators after the end of the Audit Period.  Contributions are due and owing to the Funds for the unknown number of

14

hours worked October 2, 2016 through the present.  Accordingly, the Funds request that the Court order Chagrin Valley to report to the Funds all hours paid to all of its employees who operated a crane (or performed other covered work) from October 1, 2016 through the present. The Funds further request that Chagrin Valley be required to pay contributions with interest and statutory interest to the Funds based upon those same hours.[7]  Chagrin Valley should further be permanently enjoined from violating the CBA.

### D.     Chagrin Valley's Claims Against the Funds and Mr. Helmick Fail as a Matter of Law.

#### 1.    Counts One and Two Fail Because They are Preempted by ERISA.

Counts One and Two against the Funds are preempted by ERISA and therefore fail as a matter of law.  Count One is a breach of contract claim alleging that the Funds "failed to perform and satisfy [their] contractual obligations under the [collective bargaining] Agreements."  Second Amended Counterclaim & Second Amended Third Party Compl., ECF No. 29, at ¶ 247.  That Count alleges that the Funds failed to meet their obligations under the CBA by failing to properly calculate benefits due; failing to properly audit Chagrin Valley's payroll records; failing to properly communicate audit findings; and failing to apply contributions correctly.  Id. ¶ 24. Count Two seeks declaratory judgment that Chagrin Valley does not owe delinquent contributions to the Funds pursuant to the CBA.  Id. ¶ 30.  However, because the Funds are employee benefit plans subject to ERISA, and because Carol Wilson and the Trustees are fiduciaries of these employee benefit plans, Chagrin Valley's claims are preempted by ERISA. The Funds' arguments are set forth in its Partial Motion to Dismiss, ECF No. 30, and its Reply to Chagrin Valley's Response in Opposition to its Partial Motion to Dismiss, ECF No. 33.

---

[7] In ordering this relief, the Funds will avoid the cost and delay associated with initiating new litigation to collect

2.     The Funds are not a Party to the CBA.

To prevail on a breach of contract claim, Chagrin Valley must show the existence of a contract with the Funds.  No such contract exists.  The Funds are not a party to the CBA.  Counts One and Two fail on this basis, as well.

3.     Chagrin Valley's Defamation Claim Against the Funds and Mr. Helmick Fails Because the Communication was Both True and Privileged.

Under Ohio law, the elements of defamation are: (1) the defendant made a false and defamatory statement; (2) that the false statement was an unprivileged publication to a third party; (3) that the defendant acted with the required degree of fault; and (4) actionability or special harm caused by the statement.  Hout v. City of Mansfield, 550 F. Supp. 2d 701, 747 (N.D. Ohio 2008) (citing Hahn v. Kotten, 43 Ohio St. 2d 237 (Ohio 1975)).  As a preliminary matter, Count Three merely states that "Helmick . . . made false, defamatory, and disparaging statements about Chagrin Valley relative to its allegedly delinquent contributions   Second Amended Counterclaim & Second Amended Third-Party Compl., ECF No. 29, at ¶ 17.  A defamation claim fails as a matter of law to the extent it does not actually reference specific false comments published by the defendant.  See, e.g., Gilreath v. Plumbers, Pipefitters, & Serv. Technicians Local 502, 2010 U.S. Dist. LEXIS 142471, at *10–14 (S.D. Ohio, Aug. 30, 2010) (dismissing defamation claim on motion to dismiss when complaint failed to identify the statements or evidence of their falsity).  Because Chagrin Valley carries the burden of proof on its claim, it must do more than merely assert that allegedly defamatory statements were made.

The only specific statement contained in Chagrin Valley's Complaint, and the only statement produced by Chagrin Valley during discovery, is contained in Exhibit B of Chagrin

---

contributions for hours paid after the Audit Period.

Valley's Second Amended Counterclaim and Second Amended Third-Party Complaint. Specifically, this is an electronic communication from Mr. Helmick to Patrick Smith, Controller of Infinity Construction Co., Inc.  See Second Amended Counterclaim & Second Amended Third-Party Complaint, ECF No. 29, Ex. B at 2.  As the communication states, Infinity Construction Co., Inc. is the general contractor "on a project at the Local 18 Richfield Training Site." Id.  The "Local 18 Richfield Training Site" project is a construction project for the Apprenticeship Fund, one of the Funds initiating this Action.  Wilson Aff. ¶ 9.  The communication from Mr. Helmick further states that "Infinity Const. has Chagrin Valley Steel Erectors Inc. sub-contracting" on that project.  Id.  Therefore, the only specific communication referenced in Chagrin Valley's counterclaim relates to a communication from the Funds to its own general contractor regarding a project for the Apprenticeship Fund – a project where the Fund is a customer and Chagrin Valley is performing work as a subcontractor.  The communication further attaches a letter setting forth the balance of delinquent contributions owed. Id.

First, Mr. Helmick's communication to Chagrin Valley was not a false statement.  As previously stated, Chagrin Valley is delinquent in making contributions to the Funds.  See Section II.B., supra.  In fact, Chagrin Valley has failed to make contributions as required by the CBA since it first became a signatory to that agreement.  Therefore, stating that Chagrin Valley "is not in good standing" with the Fund office because it is delinquent in making contributions is not a false statement.  Chagrin Valley is delinquent in making contributions to the Funds.  Thus, Chagrin Valley's defamation claim fails because it cannot establish that Mr. Helmick's statement was false.

Even assuming that Mr. Helmick's statement was false (which it is not), the allegedly false defamatory statement is protected by qualified privilege and thus is only actionable if Mr. Helmick published the communication with "actual malice."  Chagrin Valley lack evidence of actual malice on Mr. Helmick's part.  "A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it."  Hahn v. Kotten, 43 Ohio St. 2d 237, 244 (Ohio 1975).  A defendant otherwise protected by a qualified privilege can be held liable only if it is proven by clear and convincing evidence that he or she acted with actual malice, meaning the speaker knew the statement was false or acted with reckless disregard as to its falsity.  Id. at 237. In defining what constitutes recklessness in the context of defamation, a defendant's "mere failure to verify [the truth of a statement] may constitute negligence but is not sufficient to support a finding of reckless misconduct" in the absence of evidence that the defendant doubted the truth of his or her statements.  O'Hara v. Board of Educ. Of Brooklyn City Sch. Dist., 72 F. App'x 311, 314 (6th Cir. 2003).

Mr. Helmick's communication to Infinity Construction Co. is protected by qualified privilege.  As conveyed in the communication, Chagrin Valley is a subcontractor on a project building a training facility for the Apprenticeship Fund.  Infinity Construction Co. is the general contractor on that project.  The Apprenticeship Fund is therefore a customer of Infinity Construction Co. (and therefore of Chagrin Valley).  As a customer, the Funds were entitled to discuss how work was being performed on their facility and the deficiencies of any subcontractor.  Chagrin Valley alleges only that the Funds communicated this information to the contractor of their project in relation to a subcontractor on that project.  The contractor and customer would clearly have a common interest — the interest that the work be completed and

18

performed according to the terms that had been agreed upon in compliance with the CBA.  Mr. Helmick's communication properly summarized that interest.  Based on Chagrin Valley's allegations, the allegedly defamatory statement was protected by qualified privilege and thus is only actionable if the statement was made with actual malice.

Further, Mr. Helmick's communication was also privileged because of his role for the Funds.  Mr. Helmick acts as the Funds' field representative and works with signatory contractors to assure that they pay any delinquent contributions owed.  Wilson Aff. ¶ 8.  In that capacity, he will also work with general contractors (like Infinity) to see if they can be of assistance.  This is beneficial to the general contractor, as well, because the general contractor has an interest in making sure operating engineers will come to work.[8]  Thus, Mr. Helmick's communication was made in good faith to a party with a common interest in a manner that was limited in scope to the circumstances.

Not only was Mr. Helmick's truthful statement protected by qualified privilege, but Chagrin Valley must prove sufficient facts to support a finding of actual malice because the communication at issue regarded a labor dispute.  Ohio courts impose an "actual malice" standard on state law defamation claims arising out of labor disputes.  See, e.g., Dale v. Ohio Civil Serv. Employees Ass'n, 57 Ohio St. 3d 112, 114 (Ohio 1991); see also Hout, 550 F. Supp. 2d at 750 (N.D. Ohio 2008) (citing Dale and holding that plaintiffs must establish actual malice in defamation cases involving labor disputes).   A "labor dispute" is "any controversy over the terms and conditions of employment or the representation of employees for collective bargaining purposes, regardless of whether the disputants stand in the relation of employer and employee,

---

[8] Employees whose benefits are not being paid may elect not to work for a delinquent contractor, impacting the work that contractor is performing.

and regardless of whether the dispute is subject to the jurisdiction of the National Labor Relations Board." Dale, 57 Ohio St. 3d at 116. The Funds are third party beneficiaries of collective bargaining agreements which set the terms and conditions of employment and require contributions to the Funds as part of the terms and conditions of employment. The communication at issue was therefore a statement about a dispute with an employer regarding the terms of a collective bargaining agreement. As a result, Chagrin Valley must prove that Mr. Helmick made the statement maliciously.

Chagrin Valley cannot establish that Mr. Helmick acted with actual malice as a matter of law. The allegedly defamatory statement would only be made with actual malice if Mr. Helmick knew it was false or acted with reckless disregard of its falsity. It is clear not only that Chagrin Valley is actually delinquent in making these contributions, but also that the Funds and Mr. Helmick believed this to be the case. In fact, Chagrin Valley's Second Amended Counterclaim & Second Amended Third-Party Complaint explicitly states that "[the Funds] continuously provided Chagrin Valley with notifications that . . . Chagrin Valley failed to fully pay certain fringe benefit contributions" pursuant to the CBA. Second Amended Counterclaim & Second Amended Third-Party Compl., ECF No. 29, at ¶ 12. It is clear that the Funds and Mr. Helmick believed and represented that Chagrin Valley owed delinquent contributions pursuant to the CBA. Chagrin Valley has failed to meet its burden on Count Three. It thus fails as a matter of law.

    4.    Chagrin Valley's Tortious Interference Claim Also Fails as a Matter of Law.

In Count Four, Chagrin Valley alleges that the Funds and Mr. Helmick interfered with contractual and business relations with its "business relationships." Second Amended

Counterclaim & Second Amended Third-Party Compl., ECF No. 29, at ¶ 40.  Again, the only specific relationship Chagrin Valley has produced is Infinity Construction Co. and involves the same electronic communication discussed above.  Chagrin Valley's claim fails as a matter of law because it cannot establish that the Funds or Mr. Helmick actually and intentionally thwarted an existing or potential business relationship or that a business relationship was thwarted at all.

A claim for tortious interference requires the plaintiff to establish: "(1) the existence or the prospect of a business relationship; (2) that defendant knew of the plaintiff's relationship; (3) that defendant intentionally and materially interfered with the plaintiff's prospective relationship; (4) the interference was without justification; and (5) the interference caused the plaintiff to suffer damages."  Edwards v. Woodforest Nat'l Bank, 2012 U.S. Dist. LEXIS 72974, *9–10 (N.D. Ohio May 24, 2012) (citations omitted).  Chagrin Valley lacks evidence to meets its burden on all but the first two elements of this claim.

"The basic principle underlying a claim of tortious interference is that when someone acting without privilege, induces or purposely causes a third party to terminate a business relationship with another, then that person should be held liable for the harm resulting from the terminated relationship.  Leisure Sys. v. Roundup LLC, 2012 U.S. Dist. LEXIS , at 155948, at *91 (S.D. Ohio Oct. 31, 2012) (citing A&B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council, 73 Ohio St. 3d 1, 14 (Ohio 1995)).

When a tortious interference claim is based on statements that are qualifiedly privileged under defamation law, the protection afforded those statements as to defamation is equally applicable to the tortious interference claim.  See Ancestry.com Operations, Inc. v. DNA Diagnostics Ctr., Inc., 2016 U.S. Dist. LEXIS 97297, at *91 (S.D. Ohio July 26, 2016) (citing A&B-Abell Elevator Co., 73 Ohio St. 3d at 14).  "To succeed on a tortious interference claim in

such a case, the claimant must clearly and convincingly show that the communication was made with actual malice." Id.

Chagrin Valley has not alleged or presented any facts regarding interference with a specific third party except for Infinity Construction Co.  However, other than baldly asserting that Funds and Mr. Helmick "interfered" with this third party relationship, it has no evidence to support this assertion.  Nothing in Chagrin Valley's Second Amended Counterclaim and Second Amended Third-Party Complaint alleges or provides evidence that any "third-party customer" terminated a business relationship with Chagrin Valley.  In fact, Ms. Ruple stated in her deposition that Chagrin Valley finished the job at the Richfield training site.  Ruple Deposition, p. 50 ln. 11–13 ("Q: Did Chagrin Valley complete the work at the Operating Engineers site assigned to it by Infinity Construction? A: Yes.").  In fact, Chagrin Valley cannot establish that this communication impacted even its future relationships with Infinity Construction Co.  Ms. Ruple admitted that Infinity Construction Co. is still inviting Chagrin Valley to submit bids on future work, including invitations by both telephone and in writing.  Ruple Deposition, p. 54, ln. 10–26.  Thus, Chagrin Valley not only cannot establish interference, but further cannot prove that it has suffered any damages as a result of Mr. Helmick's communication.

Further, as discussed in relation to Chagrin Valley's defamation claim, the communication from Mr. Helmick to Infinity Construction Co. was privileged.  As a result, Chagrin Valley must prove that the Funds and Mr. Helmick acted with actual malice.  There are simply no facts to support this requirement.  There are therefore no genuine issues of material fact and Count Four fails as a matter of law.

2:16-cv-01084-EAS-KAJ Doc #: 35 Filed: 08/31/17 Page: 25 of 26 PAGEID #: 275

<div align="center">5. <u>Mr. Helmick Was Never Served in This Action.</u></div>

Mr. Helmick has never been served in this Action. Service was apparently improperly made on a Justin M. Helmick living in Eastlake, Ohio. Summons Issued as to Justin M. Helmick, ECF No. 9. Mr. Helmick does not and never has lived in Eastlake, Ohio. <u>See</u> Helmick Declaration ¶ 3.[9]

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Funds respectfully move the Court to enter summary judgment against Chagrin Valley Steel Erectors, Inc. in the amount of $60,661.00, plus accumulated interest charges in the amount of $11,154.47 calculated to August 9, 2017, plus $13.83 per day thereafter and statutory interest in the amount of $11,154.47 calculated to August 9, 2017, plus $13.83 per day. The interest and statutory interest shall accrue daily as long as the judgment remains unpaid. The Funds further seek the injunctive relief sought above.

The Funds and Mr. Helmick further respectfully move the Court to enter summary judgment dismissing all of the claims asserted against them in Chagrin Valley's Second Amended Counterclaim and Second Amended Third-Party Complaint.

<div style="margin-left:40%">
Respectfully submitted,

/s/Daniel J. Clark
Daniel J. Clark, (0075125), Trial Attorney
Elizabeth B. Howard (0092585)
Vorys, Sater, Seymour Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone: (614) 464-6436
Facsimile: (614) 719-4650
djclark@vorys.com
ebhoward@vorys.com
*Attorneys for the Funds and Mr. Justin Helmick*
</div>

---

[9] Mr. Helmick's Declaration is attached to this Motion as Exhibit D.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 31, 2017, I electronically filed the foregoing Motion for Summary Judgment with the Clerk of Court using the EM/ECF system, which will send notification of such filing to the following:

> Andrew J. Natale (0042110)
> Melissa A. Jones (0074967)
> FRANTZ WARD LLP
> 200 Public Square, Suite 3000
> Cleveland, OH 44114
> anatale@frantzward.com
> mjones@frantzward.com

<div align="right">

/s/Daniel J. Clark
Daniel J. Clark

</div>