IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CAROL A. WILSON**, *et al.*, | ) | Case No.: 2:16-cv-1084 |
| | ) | |
| *Plaintiffs,* | ) | Chief Judge Edmund A. Sargus |
| | ) | |
| *vs.* | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| **CHAGRIN VALLEY STEEL** | ) | |
| **ERECTORS, INC.,** | ) | |
| | ) | |
| *Defendant / Third-Party Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | |
| | ) | |
| **JUSTIN M. HELMICK**, | ) | |
| | ) | |
| *Third-Party Defendant.* | ) | |

---

**DEFENDANT / THIRD-PARTY PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER TO ASSERT
ADDITIONAL AFFIRMATIVE DEFENSE, *INSTANTER***

---

## INTRODUCTION

Defendant / Third-Party Plaintiff Chagrin Valley Steel Erectors, Inc. ("Chagrin Valley")

respectfully requests leave to amend its answer, *instanter,* to Plaintiff Carol A. Wilson, the Trustees

of the Ohio Operating Engineers Pension Fund, the Trustees of the Ohio Operating Engineers

Health and Welfare Fund, the Trustees of the Ohio Operating Engineers Apprenticeship and

Training Fund, and the Trustees of the Ohio Operating Engineers Education and Safety Funds' (the

"Funds") Complaint to assert a single additional affirmative defense of "fraud in the execution."

Information obtained through after-acquired discovery (including documents which were not

available to Chagrin Valley when it filed its January 13, 2017 Answer, which the Funds authored

and/or received but allegedly did not preserve, and for which the Funds refuse to provide complete

deposition testimony) supports Chagrin Valley's "fraud in the execution" affirmative defense.  As such, good cause exists for the requested amendment.

A proposed Order is attached hereto. The proposed First Amended Answer is attached hereto as Exhibit A.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The relevant background at issue for this Motion is nearly identical to Chagrin Valley's pending Rule 56(d) Motion to Deny or for Additional Time to File its Memorandum in Opposition to Funds' Motion for Summary Judgments (ECF Nos. 35, 37 and 41.)  In the interest of brevity, Chagrin Valley will not re-assert the entire factual background, but incorporates the Rule 56(d) Motion herein by reference and reiterates as follows:

### A.      Facts Relevant to this Motion.

Since at least 2005, Chagrin Valley contributed fringe benefits to the Funds pursuant certain International Union of Operating Engineers, Union Nos. 18, 18A, and 18B (the "Union") collective bargaining agreements to which Chagrin Valley agreed to participate. *See* Declaration of John Ruple (the "Ruple Dec.") ¶¶5, 9, 11. (ECF Nos. 37, 38 and 41 at its Exhibit A.)  In summary, Chagrin Valley routinely paid fringe benefits to the Funds when its covered employees, including family members (the "Family Members"), performed "operator work" (e.g., operating a crane) and did not pay fringe benefits when these employees performed "shop work" (e.g., general business operations).  Ruple Dec. ¶¶5, 8, 12. Chagrin Valley's payroll records, which it regularly submitted to the Funds, and which the Funds routinely audited and approved, clearly evidenced Chagrin Valley's fringe benefit contribution calculation methods.  Ruple Dec. ¶¶5-9, 12.  The Union expressly permitted these calculations, and the Funds agreed to and accepted these calculations and contributions for over nine years.  Ruple Dec. ¶¶5, 6, 8, 9, 10, 12;  *see also* Exhibits B and C hereto.

Chagrin Valley continued to timely and fully make all fringe benefit payments and contributions under the collective bargaining agreements, including the most recent agreement of 2012 (the "2012 CBA") in the same manner it had done for years -- for the hours that the Family Members performed "operator work" -- with the Funds' and the Union's express knowledge and approval. Ruple Dec. ¶12. Throughout 2012 and 2013, the Funds and the Union continued to agree with and accept Chagrin fringe benefit contribution calculation methods. Ruple Dec. ¶12.

Then, in late 2014 / early 2015, the Union advised Chagrin Valley that in direct contradiction of the parties' approved practices for almost nine years, the Funds may start expecting fringe benefits for all hours (operator hours and shop hours) worked by Chagrin Valley employees, including the Family Members. Ruple Dec. ¶14. Indeed, in May 2014, the Funds audited Chagrin Valley's records, and in July 2014, Chagrin Valley received written notice from the Funds that their "recent audit findings" found Chagrin Valley retroactively delinquent in its fringe benefit contributions in the amount of $58,233.23 for the period between February 2013 to May 2014. Ruple Dec. ¶15.

Throughout the following months, Chagrin Valley routinely communicated with the Union to understand and resolve the Funds' position, given the benefits now in question were calculated and paid in same manner that Chagrin Valley had paid for over nine years in accordance with the applicable agreements, and with Funds' and the Union's full knowledge and express consent. Ruple Dec. ¶¶16-17. Meanwhile, desiring to maintain its excellent relationship with the Union, in August 2014, Chagrin Valley advised that going forward, Chagrin Valley would pay fringe benefits for all hours (shop and operator) worked by Chagrin Valley employees covered by the 2012 CBA. Ruple Dec. ¶18. Chagrin Valley has, in fact, done so at all times since August 2014. Ruple Dec. ¶18, 24.

Regardless, Chagrin Valley received and continues to receive notices from the Funds alleging that Chagrin Valley failed to fully pay the fringe benefit contributions pursuant to the 2012 CBA, plus significant late fees and other penalties.  Ruple Dec. ¶24.

**B.**     **Procedural History Relevant to this Motion.**

On November 11, 2016, the Funds filed its Complaint against Chagrin Valley to recover the allegedly delinquent fringe benefit contributions pursuant to the 2012 CBA.  (ECF No. 1.)  Chagrin Valley filed its Answer, Counterclaim, and Third-Party Complaint on January 13, 2017. (ECF No. 7.)  Chagrin Valley asserted several affirmative defenses in its Answer, and reserved "the right to assert additional affirmative defense as may become available or necessary after further investigations and discovery in this matter."  *See* Chagrin Valley's Eleventh Affirmative Defense. *Id.*

As amended, Chagrin Valley asserts a counterclaim against the Funds for breach of the CBA, declaratory judgment, tortious interference with business relations, and defamation. (Second Amended Counterclaim and Third-Party Complaint, ECF No. 29.)  Chagrin Valley also asserts claims for tortious interference with business relations and defamation against Third-Party Defendant Justin Helmick, who is a representative of the Funds ("Helmick").  (*Id.*)

The Court's February 13, 2017 Scheduling Order indicates that any motions to amend the pleadings are to be filed by March 31, 2017, the discovery deadline as July 31, 2017, and the dispositive motion deadline as October 31, 2017.  (ECF. No. 15.)[1]  As discussed in more detail below, certain discovery, which the Funds and Helmick agreed to produce, still remains outstanding from the Funds and Helmick (ECF No. 37 at Exhibit D, ECF No. 39, and Exhibits D, E and F

---

[1] Chagrin Valley expended the first seven months of this litigation addressing the Funds' efforts to dismiss, oppose and/or strike virtually every pleading filed by Chagrin Valley in this lawsuit (ECF Nos. 13, 20, 30, 36), even when stipulated otherwise (ECF Nos. 16 and 28), or legally required (ECF Nos. 26 and 28), creating needless delays.  Indeed, the Funds did not even file their partial answer until July 26, 2017, four days before the July 31 discovery deadline. (ECF No. 31.)

hereto.)  Meanwhile, the Funds and Helmick filed their motion for summary judgment on August 31, 2017, two months before the October 31, 2017 dispositive motion deadline, while knowing they remain delinquent in their discovery obligations.  (ECF No. 35.)  Chagrin Valley has continuously attempted, and is still attempting, to resolve the discovery issues and filed a Rule 56(d) Motion to Deny or for Additional Time to File its Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment in response to Plaintiffs' premature motion for summary judgment (ECF Nos. 37, 39 and 40); *see also* Exhibits D, E and F hereto.

Trial is not scheduled until for another ten months, on July 9, 2018.  (ECF No. 22.)

**C.**     **Chagrin Valley's "Fraud in the Execution" Affirmative Defense.**

Evidence obtained (i) at Chagrin Valley's August 17, 2017 partial Fed.R.Civ.P. 30(b)(6) deposition of the Funds, and (2) from Union documents received by Chagrin Valley on August 22, 2017[2] strongly support that the 2012 CBA is void *ab initio* due to fraud in the execution committed by ***both*** the Union and the Funds.  *Operating Engineers Union 324 Health Care Plan, et al., v. G & W Construction Co., et al.,* 783 F.3d 1045 (6th Cir. 2015) ("We allow an employer to raise a defense of fraud in the execution of the contract because success on that defense would render the contract void *ab initio* and preclude the employee benefit fund from collection.").

A claim for fraud in the execution alleges that a party was led "to believe the nature of his act is something entirely different than it actually is." *Iron Workers' Union No. 25 Pension Fund v. Allied Fence and Security Sys*., 922 F.Supp. 1250, 1257 (E.D. Mich. 1996) (internal citations omitted). A claim for fraud in the execution arises when a party signs onto an agreement "with neither knowledge nor reasonable opportunity to obtain knowledge of its character or essential terms." *Id*.  A contract that was procured through fraud in the execution is void.  *See id.*

---

[2] The Funds and Chagrin Valley agreed to obtain and/or conduct this discovery after the July 31, 2017 discovery deadline.  Indeed, when Chagrin Valley suggested a formal extension of the discovery schedule (verbally and in writing), the Funds asserted (verbally and in writing) that it was not necessary. *See* 7/19/17 email from Daniel Clark to Melissa Jones at Exhibit G hereto.

Federal courts, including numerous courts in the Sixth Circuit, hold that summary judgment in favor of a benefit fund is inappropriate where a question remains as to whether a union representative obtained the employer's consent to be bound by the agreement based on misrepresentations as to the nature of that agreement. *See id.* (holding that fraud in the execution was a viable defense where the union representative represented that the collective bargaining agreement only applied to one job, but it actually applied to all jobs); *Orrand v. Keim Concrete Pumping, Inc.,* No. 2:08-CV-1046, 2010 U.S. Dist. LEXIS 89215, at *51 (S.D. Ohio Aug. 30, 2010) (denying motion for summary judgment "[s]ince Keim Concrete's counterclaim and affirmative defense of fraud in the execution remains, however, liability has not been determined for fringe benefit contributions under the 2004 CBAs and the 2008 Ohio Highway Agreement during the audit period."); *Iron Workers' Union No. 25 Pension Fund v. Nyeholt Steel*, 976 F. Supp. 683, 690 (E.D. Mich. 1997) (holding that the defense of fraud in execution prevented summary judgment in favor of the fringe benefit fund where the Union specifically instructed the employer that the collective bargaining agreement at issue only applied to one job, not all jobs); *Trs. for the Upper Peninsula Plumbers' & Pipefitters' Health & Welfare Fund v. Frazer*, No. 2:05-cv-266, 2006 U.S. Dist. LEXIS 18938, at *19 (W.D. Mich. Apr. 13, 2006) ("[c]ourier's representations to defendant about defendant's obligations [under a collective bargaining agreement] were clearly false. Whether defendant had actual or constructive knowledge that the language of the collective bargaining agreement would not allow him to just pay contributions to a pension fund is clearly a disputed issue in this case. Accordingly, summary judgment is not appropriate on whether fraud in the execution could render the short form agreement void.").

Here, the Union **and** the Funds clearly knew and agreed that the 2012 CBA did not apply to Chagrin Valley's employees when they were not performing operator work. The Union presented the 2012 CBA for Chagrin Valley to sign, just as it had all previous CBAs. Chagrin Valley's belief

that it was agreeing to a continuation of the manner and method of calculating fringe benefit payments that had been employed for **nine years** was reasonable and justified.

Documents obtained from the Union in this lawsuit in August 2017 (eight months after Chagrin Valley filed its Answer) confirmed that the Union permitted Chagrin Valley's calculation methods - - the same methods the Funds themselves approved for years.  *See* Contractor Review & Follow-Up Response Form, attached hereto as Exhibit B, which states:

> "I [the Union] have allowed [Chagrin Valley] to use the residential [non-union] rate on his private work these members [the Family Members] do in the shop only at the rate of $26.10.  He [Chagrin Valley] pays full rate to his operators in the field."

*See* Exhibit B.  Furthermore, documents obtained from the Union evidences that the Funds' own records confirm their knowledge and approval of Chagrin Valley's calculations.  *See* 3/14/13 Contractor Payroll Audit Narrative and Conclusions, attached hereto as Exhibit C, in which the Funds' audit of Chagrin Valley's records through February 1, 2013 indicated "no findings [of delinquent contributions]" because:

- "fringe hours remitted equaled the 'Operating Hours' worked"

- Vicki Ruple of Chagrin Valley advised that "fringes were paid on Crane Work only, that when they worked in the shop/fabricating, these hours didn't require fringes, that was the agreement when [Chagrin Valley] signed up."

- The Fund contacted Don Taggert [of the Union], who "was aware of the split time, that 'fabricating work' wasn't under Local 18 descriptions."

- "Based on the above, no additional findings were noted."

*See* Exhibit C.  Notably, the Funds did not produce these documents in its discovery responses to Chagrin Valley, yet the Funds either authored or received these documents in their ordinary course of business.

Moreover, when Chagrin Valley signed the 2012 CBA (and the previous CBAs), neither the Funds nor the Union advised that they would change the practices they employed over the previous

nine years. The Funds and the Union accordingly confirmed that Chagrin Valley's belief was not only reasonable, but true. Furthermore, the Funds admittedly permit the Union to make agreements on the Funds' behalf with respect to the scope, application and enforcement of collective bargaining agreements. (*See* Fed.R.Civ.P. 30(b)(6) 8/17/17 partial deposition of the Funds at pp. 18-19, 26-27 (ECF No. 37 at Exhibit C). The fact that the Funds knowingly permitted the Union to act on their behalf and make fraudulent representations as to the nature and scope of collective bargaining agreements renders them complicit in the fraud.  Again, this information was not available to Chagrin Valley until its August 2017 partial deposition of the Funds[3], eight months after it filed its January 2017 Answer.

### D.     The Funds' and Justin Helmick's Outstanding Discovery.

Chagrin Valley clearly did not have information to support a "fraud in the execution" affirmative defense until late August 2017, when it obtained, by the agreement of the parties, the Funds' partial deposition testimony, and documents form the Union.  Interestingly, the documents produced by the Union included documents either authored or received by the Funds, which the Funds did not include in its discovery responses to Chagrin Valley.  Chagrin Valley repeatedly requested the Funds to supplement their discovery responses to, among other things, include *all* responsive communications between the Funds and the Union, any internal correspondence, memoranda or files, or Justin Helmick's and Samantha Polsinelli's personal files and notes, all of which Chagrin Valley requested in discovery.  *See* Exhibit D hereto. The Funds ignored Chagrin Valley's request for this information, or simply stated the missing documents had not been preserved or retained, which Chagrin Valley is currently attempting confirm.  *See* Exhibits D, E and F.

---

[3] The relevant deposition notices and correspondence between the parties scheduling the depositions is attached hereto as Exhibit G.

Likewise, the Funds refuse to produce Justin Helmick as its designated corporate representative for deposition, and to date, only produced a representative that partially satisfies its deposition obligations.  (ECF No. 37 at Exhibit C at pp. 9, 59).  Furthermore, Justin Helmick refuses to provide *any* responses to any discovery requests on behalf of himself, individually, claiming he "never received a copy of the complaint," while actually waiving this defense and actively participating throughout this litigation.[4]  *See* Exhibit E hereto, Helmick's Motion to Dismiss (ECF No. 13), and multiple court filings and appearances by Helmick (ECF docket).  As stated above, Chagrin Valley is currently attempting to resolve these discovery issues with the Court's involvement. (ECF Nos. 37, 39, 40; Exhibit D, E and F hereto.)[5]  However, to be clear, the outstanding discovery at issue in this litigation arises from the Plaintiffs' and Helmick's refusal to fully responding to existing discovery requests, not from Chagrin Valley's attempts to request any new discovery.

## LAW AND ARGUMENT

When a request to amend a pleading is issued after the pleading amendment deadline, courts should first evaluate motions to amend pursuant to Fed.R.Civ.P. 16(b), and then under Fed.R.Civ.P. 15(a).  *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003); *Woods v. FacilitySource*, 2014 U.S. Dist. LEXIS 61919 (SD Ohio). Rule 16(b)(4) mandates that the court's scheduling order may be modified for good cause and with the judge's consent.  Rule 15(a)(2) states that leave to amend shall be given freely when justice so requires.  Furthermore, courts should also be mindful of "the general preference under the Federal Rules of Civil Procedure and Supreme Court precedent" to

---

[4] Well after asserting he was not a party to this lawsuit, Helmick then asserted the written discovery requests were untimely, rendering him exempt from responding, while simultaneously stating he would appear for a deposition. Furthermore, Helmick has not filed a protective order to date, either on behalf of himself or as a 30(b)(6) representative of the Funds, to avoid his deposition or discovery obligations.
[5] Chagrin Valley's Motion to Adjust the Case Schedule, Or, In The Alternative, Request for Status Conference, is being filed simultaneously with this Motion.

decide cases on their merits. *Stillwagon v. City of Delaware,* 2017 U.S. Dist. LEXIS 111636 (SD Ohio), citing *Foman v. Davis*, 371 U.S. 178, 181 (1962).

**A.**     **Good Cause Exists for the Amended Answer Pursuant to Rule 16(b).**

"The party seeking modification of the case schedule has the obligation to demonstrate 'good cause' for failing to comply with the court's scheduling order relative to amendments. *Pittman ex rel. Sykes v. Franklin*, 282 F. App'x 418, 425 (6th Cir. 2008).  In determining whether good cause exists, the primary consideration is the moving party's diligence in attempting to meet the case management order's requirements. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). Finally, the Court must also consider "potential prejudice to the nonmovant . . . ." *Id.* at 909.

Here, Chagrin Valley's request to amend its Answer to assert the single additional affirmative defense is after the March 31, 2017 deadline to amend pleadings.  However, good cause for Chagrin Valley's amended answer clearly exists.

First, Chagrin Valley's additional affirmative defense is based on information it obtained just weeks ago in discovery. A review of the documents indicates that Chagrin Valley was not, and could not have been, aware of the facts supporting this affirmative defense until it conducted and received this discovery.  Chagrin Valley was neither the author nor recipient of the relevant documents, nor had it received the relevant documents and information prior to August 2017. Accordingly, it was impossible for Chagrin Valley to have asserted this defense in its Answer or by the deadline for parties to amend pleadings in this litigation.

Next, the first seven months of this litigation was expended in motions to dismiss ad motions to strike, and the Funds did not file their partial answer until July 26, 2017, just four days before the discovery deadline.  Regardless, Chagrin Valley and the Funds agreed to obtain and conduct the relevant discovery after the July 31, 2017 discovery deadline.  Notably, the information produced by the Union in August 2017 includes documents supporting Chagrin Valley's affirmative

defense, yet these documents were curiously absent from Funds' discovery responses pursuant to their decision to not retain or preserve these documents.

Furthermore, since receiving documents from the Union that should have been included in the Funds' discovery responses (but were allegedly not retained), Chagrin Valley requested that the Funds, among various other items, supplement their discovery responses to provide *all* requested but outstanding documentation, and any other internal documents that may have been omitted from production.[6]  Over the past weeks, Chagrin Valley has undertaken significant efforts to resolve the discovery disputes with Funds, to no avail.[7]

However, considering that Chagrin Valley's "fraud in the execution" affirmative defense is premised on documents and information either authored or received by the Funds, no new discovery (beyond any other documents perhaps still in the Funds' possession) is necessary relative to the proposed affirmative defense.  Indeed, the currently- requested, yet outstanding, discovery which remains due to Chagrin Valley is the only discovery necessary relative to the proposed additional defense.  Further, since the additional defense relates to the same subject matter, information, documents and statements forming the bases for Chagrin Valley's original Answer (the Funds' efforts to collect allegedly unpaid fringe benefit funds from Chagrin Valley, and the parties' actions over many years), the "fraud in the execution" affirmative defense presents nothing new or different which will further complicate the case so as to require any new discovery.

Regardless, as the necessary information is (or was), and always has been in the Funds' possession, any attempt by the Funds to claim prejudice by the proposed amended answer is disingenuous.  However, to the extent the Funds believe additional discovery is necessary, an

---

[6] Chagrin Valley believes that Funds may be in possession of additional information and/or documentation supporting its "fraud in the execution" affirmative defense.
[7] Copies of communications between the parties relative to the outstanding discovery disputes are attached hereto as Exhibits D, E and F and as Exhibit D to Chagrin Valley's Rule 56(d) Motion. (ECF No. 37.)  *See also* Chagrin Valley's Request for Local Rule 37.1 Informal Discovery Conference. (ECF No. 39.)  At the Rule 37.1 informal conference held on October 4, 2017 (ECF No. 40), Magistrate Jolson advised that due to Chagrin Valley's pending Rule 56(d) Motion, she did not have jurisdiction to provide the relief sought by Chagrin Valley.  (Court's 10/4/17 Minute Entry.)

extension of the discovery deadline to accommodate the Funds' request simply remedies the issue. *See Woods v. FacilitySource, LLC*, 2014 U.S. Dist. LEXIS 61919 (SD Ohio) (permitting an amended answer and a new counterclaim filed seven months after defendant's original answer; any prejudice is mitigated by adjusting the discovery schedule).

Furthermore, although the Funds filed their motion for summary judgment, they did so two months in advance of the 10/31/17 dispositive motion deadline, with full knowledge of their outstanding discovery and Chagrin Valley's attempts to remedy the discovery issues. Accordingly, the Funds own actions creates any "prejudice" they may claim relative to their summary judgment motion, especially when (again), the affirmative defense is premised upon documents and information in the Funds' own possession, which they failed to produce to Chagrin Valley in discovery.

Finally, any amendment will not impact the July 2018 trial date, which is not scheduled for another ten months.

Accordingly, good cause clearly exists for Chagrin Valley to amend its answer to include a "fraud in the execution" affirmative defense.

### B.    Rule 15(a) Permits the Amended Answer.

Fed.R.Civ.P. 15(a) permits the amendment of a pleading with leave of court, and provides that leave to amend "shall be freely given when justice so requires." The United States Supreme Court has articulated the following standard to be used in determining whether an amendment should be permitted under Rule 15:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Foreman vs. Davis*, 371 U.S. 178, 182 (1962).  *See also Seals v. Gen. Motors Corp.*, 546 F.3d 766,

770 (6th Cir. 2008); *Oleson v. United* States, 27 F. App'x 566, 569 (6th Cir. 2001); *Thiokol Corp. v.*

*Department of the Treasury,* 987 F.2d 376, 382-83 (6th Cir. 1993).

Courts in the Sixth Circuit embrace the spirit of Rule 15 and liberally grant motions for

leave to amend an answer to assert an affirmative defense.  *See e.g., Phelps v. McClellan,* 30 F.3d

658, 663 (6th Cir. 1994) (district court properly permitted amendment of answer to add a statute of

limitations defense).  Indeed, the Sixth Circuit holds that a request to amend should only be denied

when it would result in undue delay, prejudice the opposing party, or is the result of repeated

failures to cure prior deficiencies in the pleadings.  *Seals v. General Motors Corp.,* 546 F.3d 766

(6th Cir. 2008) (allowing defendant to raise affirmative defense after summary judgment had been

briefed); *Yeager v. Union Cty. Commiss.*, 2006 U.S.Dist. LEXIS 16882 (S.D. Ohio) (granting

motion for leave to amend complaint).  Moreover, a showing of substantial prejudice is generally

required to deny the motion.  *Saad v. GE HFS Holdings, Inc.*, 2006 U.S. Dist. LEXIS 46703 * 5-6

(in granting motion to allow the addition of the defenses the court stated, "to deny a motion to

amend, a court must find at least some significant showing of prejudice to the opponent") (quoting

*Duggins ex rel. Duggins v. Steak 'n Shake, Inc.,* 3 Fed. Appx. 302, 308 (6th Cir. 2001) (quoting

*Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)).

Based on these principles, Chagrin Valley should be permitted to amend its answer.  First,

Chagrin Valley has not engaged in undue delay, bad faith, or dilatory motive.  As noted above,

Chagrin Valley's Motion is premised upon information obtained just weeks ago, during discovery

from third parties (and not the Funds, even though this information is, or was, in the Funds'

possession) in this litigation.  Indeed, this, by itself, is sufficient grounds to permit Chagrin Valley's

amended answer.  *Queen v. Park Nat'l Bank*, 2010 U.S. Dist. LEXIS 45088 (S.D. Ohio) (granting

leave to amend an answer eight months after defendant filed the initial answer, because "when a

party decides to advance a new claim as a result of discovery, Rule 15(a) provides for liberal amendment to the complaint"), citing *Tucker v. Union of Needletrades, Indust. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005).

Second, there is no prior history of Chagrin Valley failing to cure any deficiencies. Indeed, Chagrin Valley spent the first seven months of this litigation addressing the Funds' efforts to dismiss, oppose and/or strike virtually every pleading filed by Chagrin Valley in this lawsuit, even when stipulated otherwise, creating needless delays. In fact, the Funds did not even file their partial answer until July 26, 2017, just four days before the July 31 discovery deadline. Meanwhile, Chagrin Valley promptly cured all deficiencies in this lawsuit, including amending its counterclaim to remove a count that discovery did not support, within one week of obtaining that information. (ECF No. 29.) Chagrin Valley has not previously sought to amend its Answer to the Funds' Complaint. As such, Chagrin Valley should be permitted to undertake this initial amendment of its original Answer to the Complaint.

Third, the Funds will not suffer any undue prejudice if the Court permits the amendment. As stated above, the single affirmative defense is based upon information in the Funds' own possession (although notably, not in the Funds' discovery responses or document production). Accordingly, they will not be required to conduct additional discovery. Further, since the additional defense relates to the same subject matter, information, documents and statements forming the bases for Chagrin Valley's original Answer (the Funds' efforts to collect allegedly unpaid fringe benefit funds from Chagrin Valley, and the parties' actions over many years), the "fraud in the execution" affirmative defense presents nothing new or different which will further complicate the case so as to require any new discovery.[8] Trial is not scheduled until July 2018 - -  another ten months.

---

[8] As stated above, should the Funds believe they must conduct additional discovery, Chagrin Valley does not oppose an extension of the discovery deadline to accommodate the Funds' discovery. Although, considering the proposed defense

Finally, the defense that Chagrin Valley proposes to add will not be futile.  As stated above, "fraud in the execution" is a permitted defense to Funds' ERISA claims against Chagrin Valley. Accordingly, there is no futility that might warrant denying this Motion.

### III.    CONCLUSION

Good cause exists to permit Defendant Chagrin Valley Steel Erectors, Inc. leave to amend its Answer to assert a single affirmative defense of "fraud in the execution."  Accordingly, pursuant to Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure, this Court should grant Chagrin Valley leave to file its First Amended Answer to the Funds' Complaint *instanter,* attached hereto as Exhibit A.

Respectfully submitted,

*/s/  Melissa A .Jones*
Andrew J. Natale (0042110)
Melissa A. Jones (0074967)
Angela D. Lydon (0087872)
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, OH  44114
216.515.1660; Facsimile: 216.515.1650
anatale@frantzward.com
mjones@frantzward.com
alydon@frantzward.com

*Attorneys for Defendant / Third-Party Plaintiff*
*Chagrin Valley Steel Erectors, Inc.*

---

is premised upon information in the Funds' possession, new or additional discovery is not necessary, and any attempt by the Funds to assert prejudice is disingenuous.

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was filed electronically on October 6, 2017.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

<u>/s/ Melissa A. Jones</u>
*One of the Attorneys for Defendant /*
*Third-Party Plaintiff*

00441164-1