**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION**

| | | |
|---|---|---|
| **CAROL A. WILSON***, et al.***,** | ) | Case No.: 2:16-cv-1084 |
| | ) | |
| *Plaintiffs,* | ) | Chief Judge Edmund A. Sargus |
| | ) | |
| *vs.* | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| **CHAGRIN VALLEY STEEL** | ) | **DEFENDANT'S / THIRD-PARTY** |
| **ERECTORS, INC., et al.** | ) | **PLAINTIFF'S REPLY IN SUPPORT** |
| | ) | **OF ITS MOTION FOR SUMMARY** |
| *Defendant / Third-Party Plaintiff* | ) | **JUDGMENT** |

Defendant / Third-Party Plaintiff Chagrin Valley Steel Erectors, Inc. ("Chagrin Valley")

hereby replies in support of its Motion for Summary Judgment (the "Motion"). (ECF No. 59).

**I.      INTRODUCTION**

Chagrin Valley's Brief in Opposition to Plaintiffs' (the "Funds" and "Helmick") Motion

for Summary Judgment (ECF No. 58) (the "Opposition Brief"), which Chagrin Valley adopted

by reference in lieu of a memorandum in support of its Motion, is supported by ample record

evidence and arguments that simultaneously defeats the Funds' and Helmick's summary

judgment motion and supports Chagrin Valley's Motion.   The Funds and Helmick simply chose

to ignore the plethora of facts and law that defeat their claims in this lawsuit.

Assuming, *arguendo*, that the Funds' and Helmick's opposition to Chagrin Valley's

summary judgment is as set forth in their Reply in Support (ECF No. 66), the Funds and

Helmick ask this Court to simply accept that "Chagrin Valley owes the fringe benefits because

the 2012 CBA says so," while simultaneously ignoring that the Funds themselves knowingly

acted, for years, in direct contradiction to the 2012 CBA (and all previous CBAs).  The Funds

and Helmick also ask the Court to ignore their nefarious deeds, simply because this is a more

convenient fact pattern for them.

Indeed, The Sixth Circuit caselaw cited by Plaintiffs is distinguishable by one key fact: Plaintiffs knew, accepted, and implemented, both during the 2012 CBA and for years prior, that Chagrin Valley was paying fringe benefits for operator hours only.  Chagrin Valley's summary judgment briefing provides extensive record evidence confirming the Funds' knowledge and actions.  Clearly, the situation here is not one where the Funds' "had no idea what was going on" between Chagrin Valley and the Union - - the Funds themselves were directly involved. Interestingly, the Funds themselves do not assert, or even suggest, their lack of knowledge of Chagrin Valley's benefit contributions.  Furthermore, the Funds themselves admit that they honor the agreements made by the unions and employers. These facts support Chagrin Valley's motion for summary judgment, and defeat the Funds' and Helmick's motion for summary judgment.

## II. LAW AND ARGUMENT

As asserted in Chagrin Valley's opposition brief and Motion (collectively, Chagrin Valley's "summary judgment briefing"), the Funds' and Helmick's positions are further defeated by:[1]

### A. The Modification of the 2012 CBA

The 2012 CBA became effective in June 2012.  It states that fringe benefits are to be paid for all hours worked.  It also states that its terms may be modified.[2]  *See* Affidavit of John Ruple (the "Ruple Aff.," attached as Exhibit A to Chagrin Valley's opposition brief) at ¶12.

Between June 2012 and February 1, 2013, and for nine years prior, the Funds expressly permitted Chagrin Valley to pay fringe benefits for operator hours only.  *See* Exhibits B-1 and B-

---

[1] Indeed, by addressing the arguments in its Reply in Support, but refusing to address the identical arguments in its opposition to Chagrin Valley's motion for summary judgment, Plaintiffs are attempting to thwart Chagrin Valley's right to support its position in this Reply, in direct contradiction to Local Rule 7.2, and the parties' Joint Status Report permitting Chagrin Valley's summary judgment briefing, including reply briefs.  (ECF No. 56.)
[2] All record cites herein were cited in Chagrin Valley's summary judgment briefing.

2 to Chagrin Valley's opposition, and Ruple Aff. in its entirety.  Indeed, the Funds' claims in this lawsuit do not include the fringe benefits for all hours worked until February 1, 2013, even though the 2012 CBA was in effect.  *See* Ruple Aff. ¶16 and the Funds' claim computation. Furthermore, the Funds' claims include a percentage reduction for certain hours worked by Chagrin Valley employees covered by the 2012 CBA - again while the 2012 CBA was in effect. *See* Ruple Aff. ¶20.  These reductions were unilaterally applied by the Funds, at the Union's suggestion, and over Chagrin Valley's objections.  *See* Funds' Dep. I at pp. 30-33.  Additionally, the Funds' claims in this lawsuit do not include the hours Mr. Urch worked for companies other than Chagrin Valley while the 2012 CBA was in effect.  *See* Ruple Aff. at ¶31. Again, the Funds unilaterally applied this determination, at the Union's direction. *See* Funds' Dep. I at pp. 30-33.

In other words, the Funds clearly modified the terms of the 2012 CBA to permit Chagrin Valley to pay fringe benefits for operator hours only, both during the 2012 CBA and, as exemplified in Chagrin Valley's summary judgment briefing, for nine years prior.  While the Sixth Circuit enforces pension fund documents as written, nowhere has the Sixth Circuit permitted a fringe benefit fund which modified the terms of a pension fund agreement (as permitted by the terms of the agreement) to then (i) unilaterally decide to no longer honor the agreed-upon modification, (ii) demand payments of amounts it previously agreed as not owing, plus late fees, penalties and attorneys' fees from the employer, (iii) ignore all efforts by the employer to pay the allegedly outstanding principal, and refuse to negotiate a reasonable resolution; (iv) threaten to put the employer out of business if it refused to capitulate to the funds' unreasonable demands, (v) interfere with the contracts (present and future) of the employer *and* its sister company to force payments of amounts the fund itself agreed as not owing, and (vi) cancel health insurance benefits to the employer's employees because all

payments made by employer are unilaterally applied to the oldest outstanding balance claimed due the funds, thereby forcing the employees to quit even when the employer promises to make the COBRA payments, at the encouragement of the association union. Yet, this is exactly what the Funds are asking this Court to do here.

Interestingly, the Funds completely ignore the modification provision of the 2012 CBA and the facts establishing their own modification of the 2012 CBA. Plaintiffs' silence on this issue is telling. Plaintiffs cannot ignore terms of the 2012 CBA that are not beneficial to them, while simultaneously asking this Court to enforce other terms of the same 2012 CBA.

### B.      <u>Waiver and Estoppel</u>

Sixth Circuit precedent asserts that enforcement of something other than an ERISA plan document is not, in all cases, inconsistent with ERISA. *Bloemaker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436 (6th Cir. 2010). Given the facts here, Chagrin Valley's waiver and equitable estoppel defenses, which are based on the conduct of the Funds, not the Union alone, are valid here. Chagrin Valley reasonably relied to its detriment on repeated practices and admissions that it owed no contributions to the Funds on behalf of the non-operator work performed by the its employees. Moreover, the Funds knowingly authorized the Union's representatives to make agreements and define the scope of the collective bargaining agreement on its behalf. But more tellingly, the Funds themselves approved *nine years'* worth of Chagrin Valley audits that clearly evidence the Funds' and the Union's agreement to Chagrin Valley's calculation methods.

Chagrin Valley pointed to ample record evidence establishing its equitable estoppel and waiver affirmative defenses. *See United States v. Guy*, 978 F.2d 934, 937 (6th Cir. 1992) ("equitable estoppel requires a definite misrepresentation by a party, intended to induce reliance

by another, and which in, fact reasonably induces reliance by the other to his detriment."); *see also Peoples Bank & Trust Co. of Madison Co. v. Aetna Casualty & Surety Co.*, 113 F.3d 629, 638 (6th Cir. 1997) (waiver, which is the intentional relinquishment of a known right, is a form of equitable estoppel).

Chagrin Valley summary judgment briefing establishes the Sixth Circuit elements to an equitable estoppel defense:

(1) *conduct or language amounting to a representation of material fact*:  here, the Funds, for years, both before and during the 2012 CBA, knowingly permitted Chagrin Valley to pay fringe benefits for operator hours only.

(2) *awareness of the true facts by the party to be estopped*:  here, and again, the Funds, for years, both before and during the 2012 CBA, knowingly permitted Chagrin Valley to pay fringe benefits for operator hours only, in direct contradiction to what they now assert is the language of the applicable CBAs (including the 2012 CBA) requiring fringe benefit payments for all hours worked.

(3) *an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended*:  here, once again, the Funds, for years, both before and during the 2012 CBA, knowingly permitted Chagrin Valley to pay fringe benefits for operator hours only.

(4) *unawareness of the true facts by the party asserting the estoppel*:  here, for years, Chagrin Valley, who never even saw the document mandating how hours were to be paid, had no reason to believe that its payment methods, for nine years, before and during the 2012 CBA, were somehow incorrect, because the Funds themselves knowingly accepted it.

(5) *detrimental and justifiable reliance by the party asserting estoppel on the representation*:  Chagrin Valley justifiably paid fringe benefits for operator hours, just as it had for years, with the Funds' knowledge and acceptance, and now to its detriment, as the Funds unilaterally changed their minds and are demanding late fees, penalties, attorneys' fees, and the effects of the Funds' threats to "put Chagrin Valley out of business" if it didn't agree.

*Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 442 (6th Cir. 2010) (after receiving retirement benefits for two years, plaintiff employee was told that the benefit amount was wrong, his future payments would be reduced, and he had to repay the overage, but

dismissal of the employee's estoppel claim was *not* appropriate).

### C.     Fraud in the Execution

To the extent Chagrin Valley's positions, as identified above, are not sufficiently compelling, the Funds' admission that it permits Union to make agreements on the Funds' behalf with respect to the scope, application and enforcement of collective bargaining agreements (here, statements made by the Union permitting Chagrin Valley's benefit contribution methods under the 2012 CBA and previous CBAs) voids the 2012 CBA.  *See* Funds Dep. I at pp. 18-19, 26-27. (ECF No. 27 at Ex. C.); *see also Operating Engineers Local 324 Health Care Plan, et al., v. G & W Construction Co., et al.,* 783 F.3d 1045 (6th Cir. 2015) ("We allow an employer to raise a defense of fraud in the execution of the contract because success on that defense would render the contract void ab initio and preclude the employee benefit fund from collection.").

The Funds' general statements about Chagrin Valley's potential exposure to withdrawal liability are not articulated nor supported. Regardless if Chagrin Valley is somehow exposed to criminal liability by making unauthorized fringe benefit payments as the Funds suggest, the Funds are exposed to criminal liability for accepting unauthorized payments.  *See* U.S..C. §186; *see also Board of Trustees v. Burton Aluminum Products, Inc.,* 1989 U.S. App. LEXIS 14457 (6th Cir. 1989).  However, these unfounded hints at withdrawal or criminal liability are not at issue in this litigation, and clearly are nothing more than an effort by the Funds to distract the Court from the real issues herein.

### D.     The Funds' and Helmick's Defamatory and Tortiously Interfering Actions

Plaintiffs' and Helmick's sole position that "Chagrin Valley owes the contributions" fails as a defense to Chagrin Valley's defamation and tortious interference claims against Plaintiffs and Helmick. Chagrin Valley cites to ample record evidence, and law, supporting these claims.

*See* Chagrin Valley's Opposition and all evidence cited therein. Neither the Funds nor Helmick cite to, or provide one iota of rebuttal evidence, or any evidence whatsoever in response to Chagrin Valley's positions.

Regardless, even if this Court should determine that Chagrin Valley owes fringe benefit contributions, "truth" is not a defense to Chagrin Valley's tortious interference counterclaim. Again, the Sixth Circuit holds that "a tortious interference with a business relationship occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *Wilkey v. Hull*, 366 Fed. Appx. 634, 638 (6th Cir. 2010). Chagrin Valley summary judgment briefing establishes the Sixth Circuit elements to its tortious interference claim:

(1) *a business relationship*: At all times relevant, Infinity Construction was Chagrin Valley's best customer. *See* Ruple Aff. at ¶34.

(2) *knowledge of the relationship by the tortfeasor*: the Funds and Helmick clearly knew of Chagrin Valley's business relationship with Infinity Construction. *See* Helmick's 11/10/16 email to Infinity Construction, attached as Exhibit 16 to the Ruple Aff.

(3) *an intentional and improper act by the tortfeasor terminating a business relationship*: In Helmick's 11/10/16 email to Infinity Construction, the Funds and Helmick specifically asked for Infinity's help in getting Chagrin Valley's alleged outstanding fringe benefits paid. The "help" the Funds and Helmick requested was that Infinity would use its position as the general contractor to pressure Chagrin Valley to pay the disputed amounts. This interpretation of the Funds' and Helmick's statement (and their intent) is supported by the fact that this is exactly what happened: Infinity interpreted this email as a threat, and stated "[w]hatever the dangerous game that John and Vicki are playing is we want to part of it." Infinity then stated that it would "hold payments on the Operating Engineers project and cease awarding them any more work" if the payments were not made. The Funds and Helmick admittedly knew of Infinity's intentions, but did absolutely nothing to stop Infinity. Following this, Infinity refused to approve legitimate change orders and has not awarded any more substantial work to Chagrin Valley or to its sister company, Ruple Builders. Indeed, despite the Funds' and Helmick's "after the fact" testimony that their sole intention in sending the Email was to obtain payment of the fringe benefits *from Infinity*, the Funds and Helmick *admit* that they never articulated this sole intention to anyone, including Infinity. Furthermore, the Funds themselves directed Infinity to bar Ruple Builders and Chagrin Valley from the Project site, and

the Funds themselves delayed or rejected certain Project payments due Ruple Builders. (Ruple Aff. at ¶ ¶34-37). Neither the Funds nor Helmick cite to one single piece of evidence refuting these facts.

(4) *the lack of privilege on the part of the tortfeasor*:  Helmick and the Funds have not provided any support for the contention that Infinity had any interest in ensuring that Chagrin Valley was up-to-date on its benefit contributions.  The Funds and Helmick admit that the Funds and Chagrin Valley are not competitors.  *See* Funds Dep. II at p. 108.  The Funds and Helmick admit that the Funds are not parties to any contract with Infinity which permits the Funds' actions.  *See* Funds Dep. II p. 106.  No contract exists between the Funds and Chagrin Valley.  Indeed, Chagrin Valley is not even a subcontractor to Infinity on the Ohio Operating Engineer's Training Facility Project; it is a subcontractor to Ruple Builders, which contracted with Infinity. Ruple Aff. at ¶37.

(5) *resulting damages*:  Since the Funds' and Helmick's 11/10/16 email to Infinity, Chagrin Valley and Ruple Builders has bid on projects for which Infinity is the general contractor.  Infinity has not hired Chagrin Valley or Ruple Builders for a single project of any substance since the 11/10/16 email.  However, prior to the Funds' and Helmick's 11/10/16 interference, Infinity hired Chagrin Valley and Ruple Builders to perform work on a large number of projects for Infinity.  For example, between 2012 and 2016, Chagrin Valley and Ruple Builders received between $500,000 and $964,0000 in contract payments each year from Infinity.  However, in 2017, Chagrin Valley has not received a single contract payment from Infinity, and Ruple Builders only received $386,000 in contract payments, for contracts which existed prior to the November 2016 email from the Funds and Helmick.  Ruple Aff. at ¶36.

*Hahn v. Rauch*, 602 F. Supp. 2d 895, 906 (N.D. Ohio 2008).

Finally, injunctive relief to ensure Chagrin Valley's employees receive health insurance benefits is moot:  Anthony Urch, Chagrin Valley's only certified crane operator, quit his employment with Chagrin Valley due to his lack of health insurance and other benefits - - even though Chagrin Valley continues to fully pay all fringe benefits, the Funds are applying these payments to the oldest, and disputed, allegedly outstanding balance, rendering the fringe benefits for current work as unpaid.  Ruple Aff. ¶¶32, 33.  All other certified crane operators refuse to work for Chagrin Valley, even temporarily, because they will not receive any health insurance or other benefits.  *Id.*

Accordingly, summary judgment should be granted in Chagrin Valley's favor on defamation and tortious interference counterclaims, or at the very least, the Funds' and Justin Helmick's summary judgment on these claims should be denied.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Chagrin Valley's motion for summary judgment on Plaintiffs' claims and Chagrin Valley's counterclaims should be granted in Chagrin Valley's favor.

Respectfully submitted,

*/s/      Melissa A .Jones*
Melissa A. Jones (0074967)
Angela D. Lydon (0087872)
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, OH  44114
216.515.1660; Facsimile: 216.515.1650
mjones@frantzward.com
alydon@frantzward.com

*Attorneys for Defendant / Third-Party Plaintiff*
*Chagrin Valley Steel Erectors, Inc.*

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically on December 5, 2017.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ Melissa A. Jones
One of the Attorneys for Defendant /
Third-Party Plaintiff